## Landis' Estate. No. 2

*S. Richard Harr*, for exceptant.

*T. Roberts Appel* and *Roberts R. Appel*, contra.

APPEL, P. J., January 10, 1935.—Isaac S. Landis died testate November 8, 1931. In his will duly probated he bequeathed, inter alia, one share of his residuary estate

to one Clara Kibbler. At the audit held May 21, 1934, it was disclosed that the said Clara Kibbler was weak-minded and had been committed to the Lancaster County Hospital for the Insane on the certificate of two physicians on April 26, 1930, and that she is an inmate in said institution at the present time. In the adjudication filed May 21, 1934, there was awarded one share of the residuary estate "to a guardian to be appointed of Clara Kibbler, a weak-minded person, one-nineteenth, $662.83". The adjudication was on that day confirmed nisi upon the appointment of a guardian. On June 6, 1934, a petition was presented to the Court of Common Pleas of Lancaster County by a son of the said Clara Kibbler, praying the court to adjudge her a weak-minded person, unable to take care of her property and asking the court to appoint a guardian for her estate. In pursuance of the above petition a hearing was had, and on June 22, 1934, the said court adjudged Clara Kibbler to be a weak-minded person and appointed the Farmers Bank & Trust Company of Lancaster her guardian. The bond of the guardian in the sum of $1,400 was, on June 29, 1934, approved by the said court of common pleas.

On June 14, 1934, the Directors of the Poor and the House of Employment of the County of Lancaster or the Directors of the Lancaster County Poor District, by its secretary, presented a petition to the orphans' court, representing they had a claim for maintenance of the said Clara Kibbler for more than the amount of her legacy, praying the court to open the adjudication for the purpose of amending the schedule of distribution and to award to them the legacy to Clara Kibbler on account of their claim. They asked that this be done pursuant to sections 1006 and 1007 of the Act of May 14, 1925, P. L. 762. A rule to show cause, etc., was granted and immediately made absolute; all counsel concerned having notice at bar and no objection being urged. The audit being

opened the matter is now before the court. The Act of 1925 is a general comprehensive act and its title is: "An Act Concerning poor relief and the creation and government of poor districts and the administration of the same in all counties of the Commonwealth, except in counties of the first and second class; and revising, amending, consolidating, and changing the law relating thereto." The claim of the poor authorities is made under sections 1006 and 1007 which are as follows:

"Section 1006. *Poor Authorities to Collect Money Due Pauper.* Whenever any person shall have become a public charge in any poor district of this Commonwealth it shall be lawful for the directors of the poor of such district to sue for and recover any and all sums of money which may be due to such poor persons in the present or to become due in the future, whether the same be claimed by such poor person upon an express or an implied contract by judgment, mortgage, order, or decree of any court having jurisdiction of the subject-matter, and for this purpose the said directors of the poor are authorized to employ any and all legal means which such poor person might have employed had he or she not become chargeable as aforesaid.

"Section 1007. *Form of Action.* In all suits brought under section one of this act the writ or process shall issue in the name of the owner of the chose in action for the use of the directors of the poor of the proper poor district, and at the hearing proof that the owner of the right of action has become legally chargeable to the county or poor district whose directors of the poor are the use plaintiffs shall be conclusive of their right to recover whatever may be legally due or to become due to the poor person so found to be chargeable. If the amount due shall have been already ascertained and judgment entered the proof that the said plaintiff has become chargeable as aforesaid shall be conclusive of the right of the proper directors of the poor to be subrogated as plain-

tiffs in the said judgment, and if the sum due such poor person shall be founded on an order or decree of a court of competent jurisdiction then proof before such court on a rule to show cause that such poor person has become chargeable to any county or poor district shall be conclusive of the right of the directors of the poor of such poor district to recover the same, whether the same be due in the present or in the future or be due in one or several installments, and the said court shall make all the orders necessary to carry the provisions of this section into effect. Any defendant upon whom notice has been served of intention to begin proceedings under the provisions of this act to recover the amount owing by him to a person chargeable to any county or poor district who shall after this notice pay the same or any portion thereof to any other person than the proper directors of the poor shall not thereby be released from any liability, but shall be liable to pay his entire indebtedness to the said directors of the poor."

The claim of the poor authorities for a direct payment to them under the above act might have some justification were it not for section 2 of said act, which is as follows:

"Section 2. *What Act Does Not Include.* This act does not include any provisions and shall not be construed to repeal any acts relating to: . . .

"(d) Care of the insane or feeble-minded, epileptic, or habit cases."

This we believe to be a clear declaration of the legislature that the Act of 1925 is not intended to apply to the person or estate of insane or weak-minded persons.

Clara Kibbler was adjudged a weak-minded person under the provisions of the Act of May 28, 1907, P. L. 292, by the Court of Common Pleas of Lancaster County, a court of competent jurisdiction, and under the same act a legal guardian was appointed who has given bond

and duly qualified. Section 6 of this act provides as follows: "The guardian, so appointed, shall have precisely the same powers, and be subject to the same duties, as a committee on lunacy in the State of Pennsylvania. The court appointing such guardian shall have full power over the same . . ."

The powers and duties of a committee of a lunatic are specifically enumerated in section 20 of the Act of June 13, 1836, P. L. 589. This section reads as follows:

"The committee of the estate of every person found to be a lunatic or habitual drunkard, as aforesaid, shall have the management of the real and personal estate of such person, and shall from time to time, apply so much of the income thereof as shall be necessary to the payment of his just debts and engagements, and the support and maintenance of such person, and of his family, and for the education of his minor children."

In an opinion (Guthrie's Appeal, 16 Pa. 321) approved by the Supreme Court, Judge Woodward declared as follows: "From the time that a man is decreed a lunatic, according to our act of Assembly, his estate is placed in *custodia legis*. His committee are the agents of the law to manage it and apply the 'income.' If the income be found inadequate to pay his debts, and to support the lunatic and his family, his personal estate may, under direction of the court, be applied to these purposes. . . . That estate, and the owner of it, have been segregated from the community and placed with the court, under a system of rules and regulations, and whoever would touch it, must approach it according to that system."

We are of the opinion that even apart from the exclusive section of the Act of 1925 the legislature never intended to interfere with the exclusive jurisdiction of the court of common pleas to whom has been committed the care and concern of all lunatics and their estates. This exclusive jurisdiction attaches when there is an adjudication of lunacy or weak-mindedness and a guardian ap-

pointed. In the instant case Clara Kibbler has not been discharged, is still living, an inmate of the institution to which she was legally committed, and her guardian is acting. It would be exceedingly unfortunate if under all the acts of assembly relating to the care and maintenance of the insane and weak-minded, there should be a conflicting jurisdiction between the orphans' court and the court of common pleas. We do not believe there is such conflict. We believe the jurisdiction is with the common pleas in all matters relating to the person and estate of Clara Kibbler, and to her guardian should be awarded the legacy given her in the will of the decedent. It will be noted there is no assignment or attachment of the legacy in the instant case.

In Kielty's Estate, 8 Luz. L. R. Rep. 19 (1895), Michael Kielty died intestate leaving to survive him a widow, Catherine, who was a lunatic represented by a committee. The poor district asked that the widow's share be awarded to them directly because they had maintained her as an insane pauper. Counsel for the poor district based his claim on the Act of May 13, 1889, P. L. 201, from which section 1007 of the Poor Relief Act of 1925 was derived. The lunatic's committee also claimed the fund. In disposing of the claim of the poor board the court held as follows: "We do not think the law supports the claim, and refuse to so distribute. We have to do here only with the estate of Michael Kielty. The estate of Catherine Kielty is in the custody of the Court of Common Pleas, represented by . . . her committee. Act of Assembly, June 13, 1836, P. L. 597, sec. 20; Guthrie's Appeal, 16 P. S. R. 321."

In this case the patient was the widow and heir who was being maintained, and the claim was made for the cost of her maintenance. A claim against a legatee, as in the instant case, would certainly rise no higher than against an heir.

We conclude, therefore, that the legacy to Clara Kib-

bler becomes vested in Farmers Bank & Trust Company of Lancaster, her guardian, and it must be so awarded. It will be administered by the said guardian under the jurisdiction of the court of common pleas as long as she lives or during the period of her weak-minded condition. We make this award without prejudice to the claimant, or any other of Clara Kibbler's creditors, to present their claims to her committee and to pursue all legal remedies for their recovery.

The award in the adjudication filed May 31, 1934, which reads:

"To a guardian to be appointed of Clara Kibbler, a weak-minded person ...................1-19 $662.83"

is amended so as to read:

"To Farmers Bank & Trust Company of Lancaster, guardian of Clara Kibbler, a weak-minded person ...................1-19 $662.83"

and as to the said amendment is confirmed nisi.