## Joseph Gensemer's Estate.    Sarah K. Davidson's Appeal.

*Lunacy—Inquisition—Traverse—Act of May 8, 1874.*

Under the act of May 8, 1874, P. L. 122, a person claiming title under a deed executed by an alleged lunatic within the time during which an inquisition had found the grantor to be a lunatic without lucid intervals, has a standing to traverse the inquisition in respect to the finding that the lunacy antedated the said deed.

*Lunacy—Inquisition—Traverse—Death of lunatic.*

The death of an alleged lunatic after traverse taken, will end the traverse proceedings, although the traverse was taken by a person whose title to land was affected by the inquisition. The death of the lunatic, however, will not affect the decree confirming the inquisition.

Argued May 21, 1895. Appeal, No. 55, Jan. T., 1895, by Sarah K. Davidson, from order of O. C. Lancaster Co., Nov. T., 1892, No. 3, setting aside traverse in lunacy. Before STERRETT, C. J., WILLIAMS, MITCHELL, DEAN and FELL, JJ. Affirmed.

Rule to set aside traverse in lunacy.

The facts appear by the opinion of the Supreme Court.

*Error assigned* was setting aside traverse.

*W. U. Hensel, O. P. Bricker, J. Hay Brown* and *John G. Johnson* with him, for appellant.—If a lunatic dies, no inquisition can be taken, for the commissioners and jury may demand inspection and the property is vested in other persons, so that no right accrues to the king: Shelford on Lunatics, sec. 22; Yaple v. Titus, 41 Pa. 495.

The appellant had a standing to traverse the inquisition: Shelford on Lunacy, 120; Ripley v. Oldfield, Sir T. Jones, 198; Niell v. Morley, 9 Vesey, 478; Ex parte Hall, 7 Vesey, 260; Ebling's Est., 134 Pa. 227; Clark's Case, 22 Pa. 466; In the Case of Russel, 1 C. P. 34.

The court did not merely continue the case, order it to be discontinued or enter a judgment; but it went so far as to absolutely quash the traverse, to strike it off, to leave the proceedings as if no traverse had been taken, and to permit the

finding of the inquisition to remain untraversed and unchallenged. The effect of this would be a legal conclusion of the insanity of Joseph Gensemer three days before he made the traverse on which the claim of Sarah K. Davidson is founded. The effect of the inquisition would be to shift the burden of proof to the party asserting capacity, instead of where it would otherwise lie—on the party alleging incapacity: Ludwick v. Com., 18 Pa. 172; McGinnis v. Com., 74 Pa. 245; Rogers v. Walker, 6 Pa. 371.

*John H. Fry* and *B. F. Davis, H. M. House* with him, for appellee.—The traverse cannot be sustained after the death of the lunatic: Ebling's App., 134 Pa. 227; Shelford on Lunacy, star page, 65, 98, 119; Draper's Est., 26 W. N. C. 218; McElroy's Case, 6 W. &. S. 451; In the Matter of Hancks, a Lunatic, 3 Johnson's Chancery Cases, 667; Wheatland's App., 125 Pa. 38.

The sum claimed by the appellant is a charge on land and is personal estate. The court of common pleas has no jurisdiction to distribute the estate of deceased persons, and the committee cannot make distribution: Frankenfield's App., 11 W. N. C. 373.

All the authorities concur in holding that the inquisition, whether of lunacy or of habitual drunkenness, is only prima facie evidence of mental infirmity during the period found, and its effect is to shift the burden of proof to the party asserting capacity: Miskey's App., 107 Pa. 611; In re Gumaer, 5 Lanc. Law Rev. 73.

As Joseph Gensemer, the lunatic, is dead, we claim that now the battle is over, the contest should be waged between the claimants, whether they be purchasers or heirs, and that the committee in lunacy has no interest therein as a party to a · traverse: In the Case of Gest, a Lunatic, 9 S. & R. 317; act of May 8, 1874, P. L. 122; In re Benedict, 3 Kulp, 96.

The granting of the right to file a traverse and the withdrawal of that right are matters in the discretion of the lower court, and not reviewable. Donaldson v. Bank, 20 Pa. 245; Library Co. v. Ingham, 1 Wharton, 72; Latshaw v. Steinman, 11 S. & R. 356; Renninger v. Thompson, 6 S. & R. 1; Gamble v. Woods, 53 Pa. 158; Wilson v. Kelly, 81 Pa. 411.

OPINION BY MR. JUSTICE DEAN, July 18, 1895 :

Joseph Gensemer, being the owner of a farm in Lancaster county, he, joined by his wife Susanna, on April 1, 1878, conveyed it to George S. Withers, subject, however, to a charge of $3,470 in favor of the grantors, the interest to be paid annually to Joseph Gensemer during his life, and after his death to his widow during her life, then the principal to enter into and form part of his estate. The charge thus remained for several years, when on 20th of August, 1886, by deed duly executed and recorded, the husband and wife assigned the security to their grandson, Joseph G. Miller, and his assigns. On September 20, 1886, just one month after assignment to Miller, on petition to the common pleas of Margaret Miller, a daughter of Gensemer, proceedings were commenced to have him declared a lunatic ; a commission issued on decree of the court to J. W. Denlinger, Commissioner. Here this proceeding stopped.

On April 23, 1889, Joseph G. Miller, by deed duly acknowledged, transferred to this appellant the charge on the land, for a money consideration equaling its face value. Some time after this date, the wife, Susanna Gensemer, died. Next, Margaret Miller, without moving further in the first proceeding, on July 9, 1891, presented another petition, averring her father to be a lunatic, and incapable of managing his business affairs. The court, on the same day, directed a commission to issue to W. H. Roland, Esq., to inquire into the truth of the averments in the petition ; the inquisition found Gensemer a lunatic, and that he had been one for five years prior to the date of the finding, which was August 6, 1891, and that he had no lucid intervals. On return of this inquisition, it was confirmed nisi August 15, 1891 ; on January 8, 1892, John H. Fry was appointed committee, who qualified and gave bond. On May 3, following, Sarah K. Davidson, on leave of court given, filed a traverse of the inquisition, and on October 10, 1892, issue was framed for trial between her as plaintiff and John H. Fry, committee, defendant. Before this issue came on for trial, Gensemer died. Then, June 6, 1894, at instance of counsel for committee, the court awarded a rule to show cause why the traverse should not be quashed, and two days afterwards, on motion of counsel for Mrs. Davidson, awarded a rule on committee to show cause why both commissions and all proceed-

ings thereunder should not be set aside. After hearing, the court directed proceedings on the traverse of the second inquisition to be stayed, but declined to set aside the inquisition. As to the first proceeding, no return day having been directed when the commission issued, and no return having been made thereto, although several years had elapsed after its issue, the court considered it, as the parties to it seem to have considered it, abandoned.

From this decree, quashing the traverse of the second inquisition, Mrs. Davidson has appealed.

It is argued by counsel for appellant that, notwithstanding the death of the alleged lunatic, the issue, in so far as the finding of the inquisition affected any property right of hers, survived, and should have been proceeded with to trial.

The ground of the traverse by Mrs. Davidson was that, according to the finding of the inquisition, the insanity of Gensemer antedated the transfer of the security to Miller, and consequently was prima facie evidence against her right, which depended upon the validity of Gensemer's transfer to Miller.

Undoubtedly, a material part of the finding is the length of time the incapacity has existed. The statutory command to the inquisitors was to inquire whether Gensemer was a lunatic; "and if you find him to be a lunatic, then how long he hath been so." The finding was, that he was a lunatic, and had been so for five years, a period extending back of the transfer to Miller, and therefore prejudicially affecting it. This at once gave Mrs. Davidson a standing as suitor to contest the finding. The statute declares, "Every person aggrieved, . . . . may traverse the same." She adopted the remedy provided by the act, filed her traverse, and issue was framed for trial; then Gensemer died. By no act or default of hers, it became impossible to proceed to judgment in that issue. The proceeding was purely statutory, and the statute made no provision for the contingency; it clearly provides for a trial during the life of the lunatic, and contemplates no determination of anything after his death, any more than it contemplates the commencement of proceedings by inquisition after his death, to determine whether he was a lunatic when alive. The decisions, holding that the jurisdiction of the court over the property of the lunatic is complete on return and confirmation of inquisition, are

unquestionably sound, because the statute expressly so declares; it was considered wise that, at that stage, his property should have the protection of the court, although the event of the traverse might be the restoration to him of all of it.   And as a result of the control of the property in this interval, the court might order a sale of all or part of it.   But although it afterwards, by judgment, turns out that the man was not insane, nevertheless, the court's disposition of his property while in its control must be held valid, otherwise the very purpose of the act conferring such control would be defeated.   Yaple v. Titus, 41 Pa. 195, cited by appellant, goes no further than to hold that, "After the return of inquisition finding lunacy, the jurisdiction of the court over the property of the lunatic is complete, either for custody, management or for sale."   In that case, an order for sale of land of the lunatic was made, after he had died, and under it the land was sold; eighteen years afterwards, the heirs of the lunatic brought ejectment against the purchaser.   It was held, that the sale was a proceeding in rem; the court having jurisdiction of the property, it was not a nullity, but only voidable.   As the heirs knew of it at the time, and did not object, and as the sale was made to pay debts, part of which were coming to the heirs who brought ejectment, the court held, that after that lapse of time, it would be unjust to take from the purchaser the land bought on the faith of a judicial decree.   But the court neither intended to, nor did decide, that the death of an alleged lunatic, pending proceedings to have him adjudged a lunatic, did not from that moment arrest the proceedings, and remand his estate and all parties interested therein to the ordinary modes of procedure for the protection of the estate, and the enforcement of rights of creditors and others against the same.   The whole object of the statute authorizing the writ of " de lunatico inquirendo," and proceedings thereunder, is the protection of the estate of the lunatic, and the care of his person; his death ends inquiry, because further inquiry would be wholly purposeless.   For the settlement, distribution and determination of claims against decedents' estates, the law has otherwise made ample provision.

Our own authorities on this point are numerous.   In Ebling's App., 134 Pa. 232, the lunatic died before return of inquisition; it was sought to make his estate answerable for costs;

this court held, there was not even power to do that before inquisition found; our brother GREEN, who delivered the opinion of the court, saying: "There can be no doubt that the death of the alleged lunatic, pending proceedings, and before any inquisition, put an instant end to any further proceedings. After that, no inquisition could be taken, and no decree could be made by the court on the question of the alleged lunacy. The proceeding was a purely personal one, and it necessarily terminated on the death of the party." And this is the conclusion of all the cases. Therefore, we think the court was right in holding that it had no further jurisdiction to proceed with the traverse after the death of· the alleged lunatic. And we think, also, it was right in refusing to quash generally the return of the inquisition. The decree confirming the inquisition should stand, for, although assailed, it was not shaken by an adverse judgment. The traversor had no standing to complain, except in the one finding, that the lunacy antedated the transfer to Miller; if it had postdated that, she could not have been heard, because she had not been prejudiced by it; as it stood, however, prima facie, the transfer to Miller was by a lunatic, a party not competent to make it. However broad may have been her denial of the finding of the inquest, or whatever scope her evidence might have taken to sustain it, even to proving that Gensemer never was insane at all, and therefore could not have been insane at the date of the Miller transfer, her right was only to contest the fact, that at a date about five years before the inquisition he was not insane. This was the real fact that she traversed.

And her burden as a suitor is not increased, because the fact at issue must be determined in another form of procedure. If this issue had not been ended by Gensemer's death, the return would, at the trial, have been prima facie correct; the burden would have been on her to overcome it; at a future trial, in another form, of the same fact, the return to the inquisition will have no greater weight; the record, prima facie, will show the finding of lunacy a few days before the transfer to Miller, but the same record will show that, as to her, there was an immediate denial of the correctness of the finding, and no trial of the issue, solely because of the death of Gensemer.

We do not see that the lunatic's estate is any better off, or

that this aggrieved appellant is any worse off, by the death of the alleged lunatic at that particular stage of the proceedings.

The decree is affirmed, and appeal dismissed at costs of appellant.