## Andrew G. Miller, Administrator of Joseph Gensemer, deceased, Appellant, v. George S. Withers.

*Charge on land—Assignment of charge—Asset of estate.*

Where a conveyance of land reserves a certain sum as a charge on the land, the interest of which is to be paid to the grantor and his wife during their lives and, after their death, the principal to his estate, the charge is not a voluntary settlement, which is irrevocable, but it is an asset of the estate, which may be assigned by the grantor during his lifetime.

*Charge on land—Lunacy—Assignment of charge.*

An owner of land conveyed it to another, reserving a certain sum as a charge on the land, the interest of which was to be paid to himself and wife during their lives, and the principal after their death to the estate of the grantor. The grantor and his wife in order to raise money assigned the charge without consideration to a grandson, who reassigned it to the person who furnished the money. After the grantor's death, his administrator brought an action against the owner of the land to recover the amount of the charge. It appeared in this suit that the grantor by an inquisition in lunacy had been found to be a lunatic at the time he assigned the charge. *Held*, (1) That the question at issue was the capacity of the grantor to contract at the date of his deed for the charge on the land, and the administrator had no such legal title as entitled him to recover independent of the claim of the person who had bought the charge from the grantor's grandson; (2) that the owner of the land might have paid the money into court, but could if he chose put the administrator upon proof of his title in the suit brought to recover the charge; (3) that the grandson was a competent witness since he was only a nominal purchaser and

had transferred to another before the suit what interest he had, if any, in the charge; (4) that the presumption of undue influence arising from the confidential relation between the grantor and his grandson was rebutted by the fact that the grandson was in no way benefited by the assignment of the charge to himself, and by the fact that the consideration money was a full one, and had all been applied to the payment of the grantor's debts; (5) that a verdict and judgment in favor of the defendant should be sustained.

Argued May 17, 1898.    Appeal, No. 14, Jan. Term, 1898, by plaintiff, from judgment of C. P. Lancaster County, March T., 1895, No. 12, on verdict for defendant.   Before STERRETT, C. J., McCOLLUM, MITCHELL, DEAN and FELL, JJ.    Affirmed.

Assumpsit to recover a charge upon land.    Before LIVINGSTON, P. J.

At the trial it appeared that the suit was brought to recover the sum of $3,470, which had been reserved as a charge on land in a deed executed in 1878 by Joseph Gensemer and wife to George S. Withers.    The interest on the charge was made payable to the grantor and his wife during their lives, and after their death the principal was to form part of the estate of the husband.    On August 20, 1886, Gensemer and wife assigned the charge to their grandson Joseph Miller, who subsequently assigned it to Sarah K. Davidson.

Other facts appear by the opinion of the Supreme Court.

At the trial defendant offered in evidence a transfer from Joseph G. Miller to Sarah K. Davidson, of the city of Philadelphia, for the same charge, the whole amount, bearing date of April 23, 1889, signed by Joseph G. Miller, witnessed by J. H. Brown and G. Ross Eshleman, and recorded on April 23, 1889, in deed book G, volume 13, page 345.

Objected to by plaintiff because neither of them is a party to the suit nor have they intervened.    Admitted.    Plaintiff excepts and bill sealed. [3]

Joseph G. Miller was called by defendant and testified as follows :

" Q. State if you please what conversation you had with Joseph Gensemer prior to, or almost the time of signing this paper that led up to the signing of it."

Plaintiff objected, for the reason that Gensemer is dead and

cannot testify as to the facts.   The court admitted the testimony and sealed a bill for plaintiff.

" A. He first came to me and he said I should get some money from somewhere, or else he would be sued for the money he is owing.   He said that Withers had offered to buy this claim of him, but he wants him to throw off $500, and he said that was too much; and now he won't pay him out the money as he needs it.   He says, 'Now you go to Lancaster and see Brown about it, what he can do.'   I came to Lancaster and Brown said· he could collect this claim.   Then he tried some way or other, and it laid over a little; and these people pressed him for money and then he sent me in to Brown.   They pressed Mr. Gensemer. Then he said : 'Go in and see if you cannot get this fixed some other way; I must have the money now or they will sheriff me.' I came into Brown and I said to him, 'We must raise the money in some other way.'" [5]

." Q. Please state whether or not you informed Mr. Gensemer that the money could not be collected at that time from Withers; he would not pay it."

Objected to by plaintiff.   Admitted.   ·Bill sealed.

' "A. Yes, sir." [6]

" Q. Please state then whether or not Mr. Gensemer transferred this charge to you by this paper for the purpose of enabling you to raise the money on it."

Objected to by plaintiff.   Admitted.   Plaintiff excepts.

"A. That is what he did.   Q. For him?   A. For him." [7]

The plaintiff offered to prove in rebuttal that shortly before the transfer of the charge on land in suit, Joseph Miller, the transferee, and a witness for defendant, made threats of personal violence against Joseph Gensemer, and fired off a revolver in Gensemer's house, the ball of which passed through a window-pane and lodged on the roof over the porch.   Also at the same time said Joseph Miller flourished a sword in a violent manner and demanded that the old man (Gensemer) sign over to him the said charge, and with said sword cut and hacked a door and knocked a panel out of it, Gensemer and Miller both being in the room as well as witness.

Objected to by defendant.   Disallowed.   Plaintiff excepts. [8]

Plaintiff offered to show by Rebecca Trostle, that Joseph Miller, the transferee of the charge on land in suit, before said

transfer was made, threatened to shoot Joseph Gensemer, the assignor of the charge, if he did not sign the transfer; shot off a revolver in the house, firing aside or over Gensemer's head; and that the ceiling was pierced with a number of bullets fired in that way and at that time.

Objected to by defendant. Disallowed. Plaintiff excepts and bill sealed. [9]

The plaintiff offered to prove by Henry M. Ganns that shortly before the execution of the transfer of the charge in suit to Joseph G. Miller, he, the said Joseph G. Miller, said that Joseph Gensemer must sign the transfer, and also swore at him and cursed him at the same time.

Objected to by defendant. Disallowed. Plaintiff excepts and bill sealed. [10]

Plaintiff's points and the answers thereto among others were as follows:

1. Under the pleadings and evidence in this suit, the verdict should be in favor of the plaintiff for the full amount of the charge in the deed on the defendant's land, with interest from April 1, 1891. In his claim he claims interest from April 1, 1891, to January, 1895, at five per cent, and from January, 1895, to February 1, 1897, at six per cent. I speak now from his declaration as filed. *Answer:* We refuse that point. The jury will say whether he is so entitled or not. [1]

2. The defendant owes the principal and interest due on the charge in suit, and the only thing for him to do is to pay it, and be protected by the court in its distribution. When the money is paid the parties claiming it can have the question as to who is entitled to the fund settled among themselves in another proceeding. *Answer:* He is not bound to do so; he might have done so; he might have paid it into court, and ask the court to frame an issue and try what you are now trying who would be entitled to it. He was not bound to do so, however, and has chosen to take the other method, to have this jury try and say to whom he shall pay it. It is admitted he owes it. He says so himself on the stand. He owes it with some interest. You are to ascertain from the testimony by your verdict whether he shall pay it to the man claiming here or not. If not, he may pay it to the other, or she may sue him and recover it then. That will be determined by your verdict in this question of sanity or insanity. [2]

4. If Joseph G. Miller was acting as agent for Joseph Gensemer at the time of the transfer to him of the charge on the land in suit, then it is incumbent upon him, Miller, to show that he practised no undue influence or fraud upon Gensemer in procuring the transfer. *Answer:* The presumption of law is that no fraud was perpetrated by Miller, and we remember no evidence in the cause charging him with fraud or undue influence. [4]

Verdict and judgment for defendant. Plaintiff appealed.

*Errors assigned* among others were (1, 2, 4) above instructions, quoting them; (3, 5–10) rulings on evidence, quoting the bill of exceptions.

*John H. Fry* and *B. F. Davis*, with them *H. M. Houser*, for appellants.—The legal title to sue is in the plaintiff and is sufficient: Armstrong v. Lancaster, 5 Watts, 68; Com. v. Lightner, 9 W. & S. 117; Com. v. Shuman's Admr., 18 Pa. 346; Crawford v. Stewart, 38 Pa. 34; Brownfield v. Com., 13 S. & R. 268; McKinney v. Mehaffey, 7 W. & S. 278; R. R. v. Wilcox, 48 Pa. 168; Lightner v. Com., 31 Pa. 344; Pierce v. McKeehan, 3 Pa. 141; Campbell v. Clevenstine, 149 Pa. 50; Hayes's App., 164 Pa. 90; Ins. Co. v. Drennan, 4 Brewster, 103; Berks Co. v. Levan, 6 W. N. C. 64.

A deed should always be construed to give it effect ut res magis valeat quam pereat: Eckman v. Eckman, 68 Pa. 460; Brown v. Mattocks, 103 Pa. 16; Act of May 28, 1715; Ritter's App., 59 Pa. 9; Cable v. Cable, 146 Pa. 451; Waugh v. Waugh, 84 Pa. 350; Fellows's App., 93 Pa. 470.

This charge could not be discharged by a judicial sale, and could not be assigned: Dewalt's App., 20 Pa. 236; Bear v. Whisler, 7 Watts, 144; Helfrich v. Weaver, 61 Pa. 385; Rohn v. Odenwelder, 162 Pa. 346; Simon v. Simon, 163 Pa. 292; Greenfield's Est., 14 Pa. 489; Ruth v. Reese, 13 S. & R. 434; Neal v. Black, 177 Pa. 102.

There was a confidential relation between Gensemer and Miller which voided the transfer: Darlington's Est., 147 Pa. 629; Miller v. Rivers, 138 Pa. 270; Smith v. Loafman, 145 Pa. 628; Armor's Est., 154 Pa. 517; Miskey's App., 107 Pa. 611; Wilson v. Mitchell, 101 Pa. 495; Wilson's App., 99 Pa. 550; Miller's Est., 179 Pa. 645.

It is immaterial whether the instrument was drawn by the beneficiary or by counsel at his procurement: Rea's Est., 11 W. N. C. 77; Thompson's Will, 13 Phila. 403.

Miller was incompetent to testify, as Gensemer was dead: Roth's Est., 150 Pa. 261; Cake v. Cake, 162 Pa. 584.

Miller could not contradict the language of the transfer, which was absolute: Thorne & Co. v. Warfflein, 100 Pa. 519; Hill v. Gaw, 4 Pa. 493; Anspach v. Bast, 52 Pa. 356; Phillips v. Meily, 106 Pa. 536.

It does not avail the defendant that the court charged the jury to consider the state of Gensemer's mind only at the time of the transfer, when the improper evidence had been admitted: R. R. Co. v. Decker, 82 Pa. 119.

The court should not have allowed plaintiff to show that when Miller alleged he was paying money to Gensemer he was heavily in debt: Stevenson v. Stewart, 11 Pa. 307; Hartman v. Shaffer, 71 Pa. 312; Glessner v. Patterson, 164 Pa. 224; Stauffer v. Young, 39 Pa. 455; Winters v. Mowrer, 163 Pa. 239; Reinhard v. Keenbartz, 6 Watts, 93.

The court erred in admitting evidence of a money transaction between Gensemer and A. Herr Smith, in 1885. It was not evidence to show sanity, that the judgment was amicably revived and enforced, as it was binding even on a lunatic: Wirebach v. Bank, 97 Pa. 543.

*Charles I. Landis* and *W. U. Hensel*, of *Brown & Hensel*, with them *Owen P. Bricker*, for appellee.—The charge was not testamentary: Appeal of Elliott's Exrs., 50 Pa. 75; Bliss on Life Ins. (2d. ed.) p. 540; Palmer v. Merrill, 6 Cushing, 282.

The fact that there was a confidential relation between Miller and Gensemer did not invalidate the transfer: Neal v. Black, 177 Pa. 85.

Offers to prove in surrebuttal matters which should have been shown in chief may be rejected: Hyndman Water Co. v. Hyndman Borough, 7 Pa. Superior Ct. 191.

The declarations of a person who has parted with the interest are not admissible to impeach the title derived from him: Packer v. Gonsalus, 1 S. & R. 525; Hoffman v. Lee, 3 W. 352; Work's App., 59 Pa. 444; Pier v. Duff, 63 Pa. 59.

OPINION BY MR. JUSTICE DEAN, October 17, 1898:

Joseph Gensemer and wife, April 1, 1878, conveyed to George S. Withers, the defendant, a tract of land for the consideration of $6,940; of this amount it was covenanted in the deed that $3,470 should remain a charge on the land, and the interest thereon, at five per cent, be paid to the grantors, Gensemer and wife, during their lives and the life of the survivor of them, and then the principal sum should form part of the estate of the husband. For some years the grantee, Withers, paid the stipulated interest, when, on August 20, 1886, the husband and wife, by deed duly acknowledged, assigned the amount charged to Joseph G. Miller, a grandson, who on April 23, 1889, transferred it by deed to Sarah K. Davidson. The wife of Gensemer died in April, 1891. On July 1, following, Margaret Miller, an only child of Gensemer, presented her petition to the court of common pleas, averring her father to be a lunatic and incapable of managing his estate, whereupon an inquisition was directed, which found that he was a lunatic, and had been such for five years before the date of the finding; this last being August 6, 1891, the commencement of the period of five years, antedated by fourteen days the execution of the transfer to Miller, and determined, prima facie, that at the date of that transaction, August 20, 1886, Gensemer was insane. The inquisition was confirmed by the court, and a committee appointed who duly qualified. Then Sarah K. Davidson filed a traverse to the inquisition; an issue was framed between her and the committee, but before a trial was reached, Gensemer, on January 4, 1894, died. Mrs. Davidson then moved to quash the proceedings; this, the court below refused to do; on appeal by her to this Court, see 170 Pa. 96, we held that the death of Gensemer, in the absence of legislation on the subject, had the effect of staying the lunacy proceedings just at that point, leaving undisturbed the inquisition, which was prima facie evidence of the lunacy, and that the burden of proof in any action involving her right to the transfer was on her to show that the incapacity of Gensemer did not exist at the date of his transfer to Miller, the party from whom she purchased. Letters of administration on the estate of Gensemer having been issued to Andrew G. Miller, this plaintiff, he brought suit against Withers, the grantee of the land bound by the charge, to recover the

amount.   He defended on the ground that he owed it, not to
the representatives of Gensemer, but to Mrs. Davidson to whom
it had passed by valid transfers, commencing with Gensemer
to Joseph G. Miller, and from him to Mrs. Davidson.   To this
plaintiff replied the insanity of Gensemer at the date of the
transfer.   The defendant then undertook to rebut the prima
facie raised by the inquest, by evidence tending to show that at
the date of the contract Gensemer was sane.   This was the is-
sue of fact which we indicated in our former opinion was the
real and only one in the case, and was the one on which it
turned in the court below.   The verdict was for defendant, and
plaintiff now appeals, assigning thirty-two errors.   The first
complaint is that, as Withers does not deny that he owes the
money, the legal title of the administrator of Gensemer is suffi-
cient to support the action as against him; that his sole duty
was to pay to the beneficiary specified in his deed, and then, if
there were equitable claims on the part of others to the money,
the court would adjust them.   There is no doubt that he in
whom is the legal title has a right of action, and a court of law
has nothing to do with the equitable claims of others raised by
the pleadings; but the rule has no application to these facts;
the very question, the answer to which ruled the case, was, who
has the legal title to the charge upon the land?   The covenant
in Withers's deed was in favor of Gensemer, but then he trans-
ferred to his grantee by deed all his title, both legal and equi-
table, and this grantee to Mrs. Davidson.   As concerned the
plaintiff, by the writings, he was in no more favorable situation
than a stranger; by these, he had not the semblance of right,
legal or equitable, to demand payment; but, to maintain his
side of the issue, he offered evidence tending to show that when
Gensemer executed the first deed he was insane, and therefore
it was a nullity; that in consequence the administrator suc-
ceeded to the right, as if no deed had been made.   And as
touching the law the court so held, but as touching the fact,
the jury did not so find.   Clearly, the legal title could not be
in two separate persons at the same time, and the obligor in the
charge could defend against him in whom it was not, for all the
title or right which Gensemer had heretofore held in the charge
had, by his writing as formal as his deed to Withers, passed ab-
solutely to Joseph G. Miller.   If he had capacity to contract,
then there was not a shred of title left in him on which to found

a suit or to constitute a cause of action.  To hold otherwise
would be to permit the merest technicality, which under a dif-
ferent state of facts has substance, to smother the real merits
of this issue.  Perhaps Withers was not bound to defend on
this ground.  It may be the court would have permitted him
to assume the position of a mere stakeholder and pay the
money into court, when it could have directed an issue between
the administrator and Mrs. Davidson to determine which had
the legal title.  But, that issue would have raised precisely the
same question raised here; it was for the stakeholder alone to
insist on the adoption of that remedy; if, however, he so chose,
he could, as obligor bound to pay somebody, put him who made
demand to proof of his title.  The mistake made by the learned
counsel for appellant is in assuming that, beyond controversy,
his client had the legal title; but this was the very fact denied,
and which he was bound to prove.  On this mistaken assump-
tion his many authorities are cited, all to the same point, such
as Com. v. Lightner, 9 W. & S. 117, where the court says: "It
would be strange if the legal title to sue were not enough to
support an action at law in the name of the trustee, without
proof that the suit was brought at the instigation of the true
cestui que trust.  What has the defendant to do with that?
The recovery will protect him from a repetition of the demand,
and he can ask no more."  While conceding this to be the law
we add that it would be strange if one not having any title to
sue could successfully maintain an action at law.  The first as-
signment being without merit is overruled.

As to the argument that the charge on the land was in sub-
stance a voluntary deed of settlement and irrevocable, there-
fore nothing passed by the assignment to Miller, it cannot be
sustained.  The grantor undertook to provide for himself and
wife an income for life, at the same time make secure the prin-
cipal.  It was wholly optional with him whether he would per-
sist in the method adopted ; he merely made the amount a charge
upon the land, so that no act of the grantee could affect the se-
curity or the certainty of the income.  This was solely for the
benefit of the grantor ; he might have accepted the money in
his lifetime if Withers chose to pay it; he might, by deed,
transfer to another every benefit intended for himself, and
every interest which would otherwise have formed part of his
estate ; it was not a settlement of part of his estate made for

the benefit of others and accepted by them, but one for his convenience, as the deed in Frederick's Appeal, 52 Pa. 338. It was a mere asset of his estate which he could and did dispose of in his lifetime.

The fourth assignment, which urges that the court should have instructed the jury that there existed a confidential relation between Gensemer and Miller, the first assignee of the charge, and, therefore, a presumption arose that the transfer was fraudulent, throwing on Miller the burden of proving that it was fair and conscionable, at once fails when the uncontradicted evidence is noted. Gensemer was embarrassed for want of money in his business ; every dollar paid by Mrs. Davidson was applied to the payment of his debts and for the promotion of his business interests ; Miller benefited nothing ; besides, the consideration received was a full one. In the face of the evidence, which completely rebutted the presumption, no advantage could have resulted to plaintiff from the court peremptorily affirming the point, and no hurt from the modification of it.

The objection to the competency of Miller as a witness is not sustained. True, he was nominally a party to the first deed, but he had long before suit, and in the lifetime of Gensemer, transferred every particle of interest he could have had to Mrs. Davidson ; but he never had any real interest ; the transfer to him was merely nominal to enable him to readily transfer to a real purchaser, whereby his grandfather could obtain money.

The other assignments relate to the admission and rejection of testimony on the subject of Gensemer's sanity. Necessarily, the testimony took a somewhat wide range ; the learned trial judge sought to confine it to a period not too remote from the date of the execution of the deed ; in this he succeeded, at least to the extent of excluding anything prejudicial to the plaintiff. A careful scrutiny of all these assignments detects neither error warranting a reversal nor merit warranting further discussion, and they are all overruled. The court below clearly apprehended the real issue, and tried it fairly on the lines suggested in our opinion on the former appeal. The law was plainly given to the jury, and the evidence was ample to sustain the verdict.

The judgment is affirmed.