## Bailey's Petition.

*Petition to traverse—Inquisition—Lunacy—Motion to quash—"Persons aggrieved"—Act of May 8, 1874.*

A petition to allow a traverse of inquisition of lunacy was granted and a motion to quash, on the ground that petitioners were not "aggrieved persons" within the Act of May 8, 1874, P. L. 122, was discharged, where the inquisition which found the devisee of certain real estate a lunatic without lucid intervals antedated by several months an agreement involving an exchange of releases by the lunatic and the petitioners.

Rule to traverse. Inquisition. C. P. Allegheny Co., April T., 1924, No. 436.

Before Carpenter and Rowand, JJ.

*Thomas M. Benner* and *William H. Colvin,* for petitioner.

*Alter, Wright & Barron,* for respondents.

ROWAND, J.—This matter comes before the court upon a petition of Ralph R. Kitchen, Harry Wilson and Robert E. L. Bailey for leave to traverse the inquisition in the above case.

The petition was presented on June 3, 1924, and a rule was granted on James H. McCready, Jr., committee of the person and the estate of Mary Pfeil, to show cause why the petitioners should not be allowed to traverse the inquisition. The petition alleges that by the terms of the will of John Pfeil, he bequeathed to his brothers and sisters, namely, Mary Pfeil, Hannah Pfeil, Margaret Pfeil, George Pfeil and Elizabeth Pfeil, a part of the income from his estate, and devised the remainder to the petitioners and to Gertrude Jenny, with the condition that if the residuary legatees and devisees did not survive the life-tenants, other dispositions should be made of his estate, the will being of record in the register's office in Will Book, vol. 165, page 335.

And, further, at No. 357, February Term, 1921, in the Orphans' Court of Allegheny County, the brothers and sisters, as above recited, filed their petition, wherein they prayed that the will of John Pfeil should be set aside on the grounds of lack of testamentary capacity and undue influence, and that by agreement dated May 10, 1921, between the residuary legatees and devisees (the petitioners) and the brothers and sisters, a settlement of the matter in controversy was effected, whereby it was agreed that a large part of the estate of the said John Pfeil was given to the brothers and sisters, and, in pursuance of said agreement, mutual releases were exchanged and the proceeding in the matter of the contest of the will was discontinued and the estate was distributed by the Orphans' Court. The agreement above referred to provided, *inter alia,* that the brothers and sisters "covenant and agree to, and that the parties of the second part (your petitioners and said Gertrude Jenny) do at all times hereafter, indemnify and save harmless the said parties of the second part of and from all damages, costs and charges sustained by said parties of the second part by the successful prosecution of any claim, demand, action or right of action in this paragraph enumerated by any of the said parties of the first part."

And, further, in furtherance of above agreement, a first mortgage upon the plant of the American Spiral Spring and Manufacturing Company, of which the petitioners are the principal stockholders, was executed and delivered to the said brothers and sisters of the said John Pfeil, deceased, and certain securities of various corporations were delivered, as well as cash in the neighborhood of $7000 was paid to the brothers and sisters, and, as a further part of the said settlement, deeds for certain real estate in which the

American Spiral Spring and Manufacturing Company was interested were exchanged.

The petition further alleges that the proceedings at the above number and term were conducted without notice to them and without any knowledge on their part. The first it was brought to their attention was on May 28, 1924, when they were served with citation from the Orphans' Court to show cause why the settlement of the contest of the will of John Pfeil, deceased, should not be set aside as to Mary Pfeil, the petition upon which the citation was issued alleging that, at the time the settlement was made, the said Mary Pfeil was a lunatic without lucid intervals.

The facts as set forth in the petition are not controverted.

It further appears from the record that on June 5, 1924, Harry Wilson and R. E. L. Bailey filed in the prothonotary's office of this court a traverse.

On June 7, 1924, James H. McCready, Jr., committee of the person and the estate of John Pfeil, by his counsel, filed his motion to quash the petition, alleging the following reasons: 1. Said petition was not brought in time and is barred by the act of assembly in relation thereto. 2. The said petitioners are not persons aggrieved within the intent and meaning of the Act of Assembly of May 8, 1872, P. L. 122.

We take it that the year of the act as referred to is an inadvertence, as the Pamphlet Laws of 1872 dicloses no such act. No doubt, counsel means the Act of May 8, 1874, P. L. 122.

It further appears from the record that on Jan. 21, 1924, George Pfeil, a brother of Mary Pfeil, presented a petition, supported by affidavits, alleging that Mary Pfeil was, and has been for the past four years and upwards, a lunatic, and by reason of the said lunacy is incapable of managing her estate and is wasting and destroying the same. Upon this petition, a commission was directed to issue, and the commissioners' return was filed on March 5, 1924, finding that Mary Pfeil was, and had been since Jan. 1, 1921, a lunatic without lucid intervals.

At the oral argument of this case, counsel for the committee did not press their first reason to quash the petition, but did contend that the petitioners are not persons aggrieved within the intent and meaning of the act of assembly.

The 1st section of the Act of May 8, 1874, reads as follows: "That every person aggrieved by any inquisition, of lunacy or habitual drunkenness, may traverse the same upon and after the return of the same, and proceed to trial thereon and have like remedy and advantage as in other cases of traverse upon untrue inquisitions found."

It is to be noted that the date of the agreement as set forth in petitioner's petition was May 10, 1921, and the finding of the commissioner in lunacy was that Mary Pfeil had been a lunatic without lucid intervals since Jan. 1, 1921, making a period of about four months prior to the date of the agreement and the exchange of deeds, etc.

After a careful consideration of the record before us, we are of the opinion that the petitioners are parties aggrieved within the intent and meaning of the act, and have a standing to traverse the inquisition.

In the case of Gensemer's Estate, Davidson's Appeal, 170 Pa. 96, it was held: "That the person holding the title under a deed executed by an alleged lunatic within the time during which an inquisition had found the grantor to be a lunatic without lucid intervals has a standing to traverse the inquisition in respect to the finding that the lunacy antedated the said deed."

Quoting from Mr. Justice Dean, on page 99: "Undoubtedly, a material part of the finding is the length of time the incapacity had existed. The statutory command to the inquisition was to inquire whether Gensemer was a lunatic; 'and if you find him to be a lunatic, then how long he hath been so.' The finding was that he was a lunatic and had been so for five years, a period extending back of the transfer to Miller, and, therefore, prejudicially affecting it. This at once gives Mrs. Davidson a standing as suitor to contest the finding."

This ruling has been cited with approval in the case of Com. *v.* Pitcairn, 204 Pa. 514.

We are, therefore, of the opinion that the motion to quash the petition should be discharged and that the petition to allow the traverse should be granted.

From William J. Aiken, Pittsburgh, Pa.