# Eckert *versus* Flowry.

*Will, what Influence will avoid.—Error to submit Questions of undue Influence in the absence of Proof.—Witness, when competent to testify as to Capacity of Testator.*

1. Undue influence in order to avoid a will must be such as to destroy the free agency of the testator at the time the instrument is made: it must be a present constraint operating on the mind of the testator at the time of making the testament.

2. Hence, in an issue to determine the validity of a will of a testatrix, which was contested on the ground of undue influence by the plaintiff in the issue, her executor, where no evidence was offered of any influence exerted over the testatrix by him at the time she made her will, nor of any fraud, misrepresentation, or constraint of any kind whatever, it was error in the court below to submit to the jury the question whether any undue influence had been exerted.

3. Conversations held with the testatrix some time after the execution of the will, do not qualify the witness to give an opinion as to her capacity to make a will: nor is evidence admissible that the plaintiff in the issue had, long after the execution of the will, forbidden the witness to go and see the testatrix.

ERROR to the Common Pleas of *Lancaster county*.

This was an issue to try the validity of a writing, purporting to be the last will and testament of Louisa Youngheim, deceased, in which John Eckert was plaintiff, and Mary E. Flowry, a daughter of testatrix, was defendant.

On the trial the plaintiff proved the proper execution of the will, and it was admitted in evidence. The defence alleged great mental imbecility in the testatrix, coupled with undue influence and actual duress, exercised upon her by the plaintiff, thereby creating an unfounded prejudice against the defendant, and resulting in the execution of this will. In support of these allegations a number of witnesses were called, who testified to their acquaintance during various periods of time with the testatrix: that she was of weak mind, short memory, and, assigning various reasons for their judgment, that she was unfit to make a will. In addition to this, the defendant offered to prove the condition of the testatrix, her acts and declarations, as well as the conduct of the plaintiff at times subsequent to the execution of the will, in order to establish the allegation of undue influence and actual constraint practised by the plaintiff upon the testatrix. This evidence

[Eckert v. Flowry.]

was admitted under exception on the part of the plaintiff. No evidence was produced of facts or occurrences tending to produce undue influence or duress previous to the execution of the will in question.

The plaintiff, in rebuttal, proved by the subscribing witnesses to the will, that the testatrix, although aged and physically infirm, was, at the time of the execution of the will, possessed of an active mind and memory, and fully understood the disposition she was making of her property. These and other witnesses testified to business transactions with the testatrix, both before and after the execution of the will, in which she displayed full capacity, and that the defendant had also treated her with harshness.

The court were requested on behalf of the plaintiff to charge the jury,

1. That if the jury believe that Mrs. Youngheim had, at the time of executing the instrument in controversy, a full and intelligent consciousness of the nature and effect of the act she was engaged in; a full knowledge of the property she possessed; an understanding of the disposition she wished to make of it by the will, and of the persons and objects she desired to participate in her bounty, the instrument is proved to be her last will and testament, and the plaintiff is entitled to their verdict in his favour.

2. The wills of aged and infirm persons are perfectly good, although, when compared with their condition in the vigour of life, the minds of such testators may seem relatively enfeebled: provided their mind and memory are active enough to enable them to understand and direct the dispositions contained therein.

3. The opinions of witnesses of the unfitness of testatrix to make a will are entitled to but little weight in opposition to the testimony of the subscribing witnesses, and that of those who were around her at and about the time of its execution. The presumption of law is always in favour of sanity; and is not rebutted by opinions of persons ignorant of the legal standard of testamentary capacity.

4. Eccentricities of conduct, violence of temper, or resentfulness of disposition, do not incapacitate from making a will; and even when a will is characterized by such qualities, proof of their existence in the testator goes rather in support of than in opposition to the will.

The court below (HAYES, P. J.), after stating the main facts of the case, charged as follows :—" It is as a general proposition true, that more reliance should be placed on the statements of subscribing witnesses than others who are not subscribing witnesses, nor were present at the signing of the will. It is also true, that the presumption is in favour of the sanity or capacity of a testator. But notwithstanding these general observations, it is the province of the jury to canvass all the testimony in the

[Eckert *v.* Flowry.]

case, so as to decide the issue according to the whole evidence.
If they decide here that Louisa Youngheim was not of sound
and disposing mind, memory, and understanding, at the time she
signed this paper, they will determine the issue by finding for
the defendant.    But should the jury find that she was capable
of making her will, they will next inquire as to the strength of
her understanding, whether she was so enfeebled by age as to be
easily prevailed upon to make a different disposition of her pro-
perty, from what she would of her own accord have done.    This
point you will also determine according to all the evidence.    If
you should come to that conclusion, [you will then consider whe-
ther she was in fact unduly influenced by John Eckert, the plain-
tiff (for that is asserted), to make the will in question, by which
her daughter is deprived of any participation in her estate, and
the same was left to her more remote descendants.    Should it be
your opinion that from his intercourse with her exercising a
stronger judgment and will over her enfeebled mind, he impro-
perly induced her to cut off her child from the benefit of her
worldly goods and property—in short, to make the devise as he
directed, not according to her independent will and wishes, you
would be justified in finding for the defendant,] in effect, that this
is not the will of Louisa Youngheim.

" [The conditions of mind set forth in the first point, are such as
indicate a sufficient capacity in a testator to make a will: it does
not require any great degree of sagacity to do that ; and it may
be stated, that a person who has mind enough to transact his
own business, is legally capable of making a will.    Still the
question recurs, should you be of opinion that Louisa Youngheim
had capacity sufficient for that purpose, whether her mind was
or was not so weak, in consequence of her great age, or other
circumstances in evidence, as to be easily misled and unduly
influenced, and whether she was or was not influenced by the
plaintiff.    According as you find on these points, should be the
verdict on the issue you are trying.]

. " In answer to the second point of the plaintiff: There can be no
doubt that the mind of a very aged person may have much failed
compared with its strength in the vigour of life, and yet be capa-
ble of making a valid will.    In most instances the mind and
memory give way with the decline of the body.    There are some
exceptions, but where there is sufficient memory and understand-
ing left to comprehend the property, that is, the items of which
it consists, and also the persons to whom the testator designs to
give it, there is in such a case a sound and disposing mind, mem-
ory, and understanding.

" In answer to the third proposition : The opinion of no witness
except a subscribing witness to the will, is entitled to any weight,
but in connection with and as corroborated by the facts which

[Eckert v. Flowry.]

the witness testifies to as the ground of his judgment. This distinction in favour of the subscribing witnesses, is founded upon the duty which the law requires of them to be careful and observe that the testator is of sound mind, before they put their names as witnesses to the instrument; for on being called upon to prove the instrument, they, in order to prove it, must swear that the testator was, at the signing thereof, of sound and disposing mind, memory, and understanding. Therefore, if there were two other witnesses of equal judgment and veracity, not being under the same obligation to scrutinize the condition of the testator, nor having the same opportunity unless they happened to be present at the time, the preference should be given to the subscribing witnesses. Yet there may be circumstances which overbalance this preference. The subscribing witnesses may be of inferior intelligence and capacity—prejudiced and perverse or otherwise deficient in qualifications to inspire confidence, and the jury may not be able, notwithstanding their opportunity, to believe their statements or accept their opinion. In this case there is a singular incident which deserves the consideration of the jury. Mr. Livingston was called upon by Louisa Youngheim (for whom he had been frequently employed professionally) to draw her will. He went to her house to obtain the proper instructions from her, made notes of her directions, returned with them home, and prepared the instrument, which he afterwards took with him to her house, where, in presence of these two subscribing witnesses and of John Eckert and himself, she executed the will which he had written for her, these identical witnesses signing it as subscribing witnesses. He remembers reading this will to her, but not in the presence or hearing of the witnesses (for that he says is not his practice), and its being explained by Mr. Eckert to her, and he also recollects, after it was executed, wrapping it in an envelope, endorsing and leaving it with Mr. Eckert, who was appointed executor in it. The will given in evidence in this case, being shown to Mr. Livingston, he testifies that he never saw this paper until he saw it here in court; and this paper is written by John Eckert, the plaintiff. Now the subscribing witnesses swear distinctly that they signed as witnesses but one paper as the will of Louisa Youngheim, and that this is the paper which they signed. They also swear that Mr. Livingston read and explained this paper on that occasion in their presence, whereas he declares that he never saw it before it was produced here in court. The defendant's counsel contends that this is a contradiction which cannot be reconciled or explained; the plaintiff's counsel urges that Mr. Livingston may, in the multiplicity of business, have forgotten the facts. If you can reconcile these conflicting statements, consistently with the integrity of the witnesses, you should do so; but, if you cannot,

7 WR.—4

[Eckert *v.* Flowry.]

and if it should be your opinion, that these witnesses did sign as subscribing witnesses the will prepared by John B. Livingston, and that he did not read and explain that paper to them or in their presence—much less the one in evidence which he says he never saw until it was shown to him here, you will consider whether that declaration on this point is true, and if not true, whether they believed it to be true; for if they made it knowing it not to be true, then there is a principle of law applicable to their testimony which may be stated thus: false in one particular, false in all. A witness undoubtedly may honestly mistake a fact from imperfectly observing or imperfectly remembering it to be a fact of such a nature that the misstatement is intentionally false—the witness forfeits all claim to belief. The credibility of testimony is peculiarly within the province of the jury, whether doubts upon the subject arise from prevarication, contradiction, or conflict of evidence, inconsistency, or any other cause; and in making these remarks, the court do not intend to indicate their opinion on the facts or the effect of the testimony, but to aid you in applying the principles of evidence as cited from the authorities, so that you may decide the issue truly, according to the evidence in the case.

"I answer to the fourth proposition. It must be conceded, that there is much reason in the theory of this proposition. Persons of very superior intellect, are sometimes distinguished by their eccentricity as well as by violence of temper. These qualities do not of course incapacitate them, and they may, indeed, as the proposition asserts, rather fortify than weaken the support of a will, for whether such persons are moved by obstinacy or firmness in their intended disposition of their property, their pertinacity generally leaves no room to doubt their intentions."

Under these instructions there was a verdict in favour of the defendant. The plaintiff thereupon sued out this writ, and averred here,

1. That the court erred in admitting in evidence the following testimony of Mary Fricker—"About a year before Mrs. Youngheim's death (more than two years after the execution of her will), Mr. and Mrs. Eckert were in there. Mrs. Eckert asked me if I would stay awhile; I said yes. Then Mr. Eckert said he would lock the door so that nobody could get in: then I left. I didn't want to be locked in. Nobody was left with the old lady."

2. The court erred in admitting in evidence the following testimony of Mary Miller—"Two or two and a half years ago I frequently went to visit her, and then Mr. Eckert forbade me going to her. That she commenced talking about her troubles; said she couldn't keep her mind together. Mr. Eckert came into her house, took her $100 away," &c.

3. The court erred in admitting in evidence the testimony of

[Eckert *v.* Flowry.]

Mary Miller, after detailing the conversation as set forth in the previous error, which occurred two or two and a half years before the trial (at least a year after the execution of the instrument), in answer to the defendant's question, "from what you have stated, do you consider she had capacity to make a will?" "No, I say again she was not fit," &c.

4. The court erred in answering the plaintiff's first point.

5. The court erred in charging the jury as above in brackets.

6. The court erred in presenting the question of undue influence to the jury, there being in the case no evidence, direct or inferential, of any undue influence having been exerted by the plaintiff upon Mrs. Youngheim to induce her to execute the will in controversy.

*Thomas E. Franklin* and *Benjamin F. Baer*, for plaintiff in error.

*J. B. Amwake* and *William S. Amwake*, for defendants in error.

The opinion of the Court was delivered, May 22d 1862, by

Strong, J.—The exceptions to the admission of evidence, as well as those to the charge of the court, all point to but one error. That, however, was radical, and it pervaded every part of the trial. The paper set up as the will of Louisa Youngheim was assailed on two grounds. The absence of a disposing mind in the testatrix, and undue influence exerted over her by John Eckert in procuring it, were both averred. It was to prove the latter that the testimony of Mary Miller and Mary Fricker, recited in the first and second bills of exceptions, was offered, and it was on the assumption that some evidence of undue influence had been given that the court put the case to the jury, to find whether the testatrix was unduly influenced by the plaintiff, or (as the learned judge said in that part of his charge to which the fifth assignment of error relates) "whether he improperly induced her to cut off her child from the benefit of her worldly goods and property; in short, to make the will as he directed, not according to her independent will and wishes." It might well be remarked that from such a mode of putting the case to them, the jury would readily conclude that inducing the testatrix to disinherit her child was the exercise of an improper influence, an influence which the court had elsewhere denominated undue, and which, if it was exerted, would avoid the will. And even if the court intended no such thing, still the verdict was made to turn upon their finding whether John Eckert had unduly influenced the testatrix to make the will. Now, that is undue influence which amounts to constraint, which substitutes the will of

[Eckert *v.* Flowry.]

another for that of the testator. It may be either through threats or fraud, but, however exercised, it must, in order to avoid a will, destroy the free agency of the testator at the time when the instrument is made. In the language of Woodward, J., in McMahon *v.* Ryan, 8 Harris 329, "it must be a present constraint, operative on the mind of the testator in the very act of making the testament." The paper asserted in this case to be a will was dated on the 21st of June 1858, and was then executed. Unless, therefore, there was some evidence tending legitimately to prove that some fraud had been practised upon the testatrix at that time, or that some misrepresentation had then been made, or that some physical or moral coercion had been employed, such as to destroy her free agency, the court erred in submitting to the jury the question whether undue influence had been exerted. It was inviting them to find as a fact that of which there was no evidence, and which the law as well as reason presumed had no existence. Undoubtedly, if the mind of the testatrix was weak, it required less influence to control her will than it would have required to control the will of one whose mind was in full vigour. But neither moral nor physical constraint is to be inferred from mental weakness alone. That undue influence which suffices to destroy an alleged will is distinct from weakness, and has no necessary connection with it. And we find in this record no evidence of any undue influence, or of any influence at all, exerted by John Eckert over the mind of the testatrix to induce her to make this will, and none has been pointed out to us by the earnest counsel of the defendant in error. There is nothing which tends to prove that he practised upon her any fraud, that he made any misrepresentation, or in any manner constrained her, in June 1858, when the will was made. And no motive was shown for the exertion of undue influence. The will was not made in his favour or in that of his relatives, and he does not seem to have any ill feeling towards the disinherited daughter. The fact, if it was a fact, that months after the will was made which appointed him executor, he exercised control over her affairs, and even over herself, during her advanced age, unconnected as it was with the testamentary act, was no evidence from which the jury could infer that the will was not her own : McMahon *v.* Ryan, 8 Harris 329.

We think, therefore, there was error in submitting to the jury to find that undue influence had been exerted, as also by admitting the evidence given by Mary Fricker and Mary Miller, to which exception was taken.

Judgment reversed, and a *venire de novo* awarded.