# Wainwright's Appeal.

1. The constraint which will avoid a will must be one operating in the act of making a will; undue influence long past and not shown to be in any way connected with the testamentary act, is not evidence to impeach a will.

2. Where a testator and his residuary legatee unlawfully cohabited together and it was alleged that many years previously she had falsely accused testator of seducing her, these facts are not sufficient evidence of undue influence over the mind of the testator in the testamentary act, where it appears the will was properly and formally drawn, and every one but the attorney who drafted it was excluded from the room when the instructions were given.

3. Such circumstances are not sufficient to justify a jury in finding a verdict against the will, and the Orphans' Court properly refused to award an issue *devisavit vel non*.

[Wainwright's Appeal.]

February 21st 1879.   Before SHARSWOOD, C. J., MERCUR, GOR-. DON, PAXSON, WOODWARD, TRUNKEY and STERRETT, JJ.

Appeal from the Orphans' Court of *Philadelphia county:* Of January Term 1877, No. 168.

Appeal of Israel R. Wainwright and others, the heirs at law of William Wainwright, deceased, from the decree of the court refusing their demand for an issue *devisavit vel non,* and affirming the. decision of the Register of Wills admitting to probate a writing purporting to be the last will of said William Wainwright, deceased. The alleged will was signed by deceased on January 10th 1876, between 11 and 12 o'clock P. M., and he died about 3 P. M. on the following day.   The will provided for the payment of his debts; the disposition of his mother's and father's portraits; that $5000 should be given to the son of each of his partners; that $5000 should be given to "Mena Ueberroth, the daughter of his friend Amanda Ueberroth," and the residue of his estate he gave to said Amanda Ueberroth.   This residue comprised the larger portion of the estate.

A caveat was filed on the 14th day of January 1876, and on the day following the alleged will was presented for probate by James Trimble, the executor, and the subscribing witnesses thereto were sworn.   The counsel for the caveators then filed a petition with the register, in which they denied that it was the will of the decedent and averred "that the said paper writing has been procured by means of undue influence practised upon the said William Wain-. wright by one Amanda Ueberroth, a devisee named in said alleged, will, with whom the said William Wainwright had for about a year previous to his decease been living and cohabiting in unlawful relations, and by one James Trimble, the father of one of the devisees and the executor named in said alleged will," and prayed for an issue *devisavit vel non* to the Court of Common Pleas, as well as the appointment of an administrator *pendente lite.*

The cross-examination of the subscribing witnesses was then proceeded with and followed by that of James Trimble, the executor above named.   Other witnesses were called and examined by the caveators.   On May 4th 1876, while the examination was still pending, the heirs at law renewed their demand for an issue, accompanied with the request that the material matters relating to the said demand which were in dispute before the register, be certified to the Orphans' Court for its decision; and thereupon the register announced that he had decided to admit the alleged will to probate. The heirs at law appealed from his decision and the proceedings were thereupon removed to the Orphans' Court.   An examiner was appointed to take testimony, which was duly reported to that court. On December 22d 1876, the cause came on for a hearing and was argued before Judges Dwight and Hanna.   The judges being

divided in their opinions as to the right of the appellants to an issue, the decision of the register was affirmed.

In his opinion, Dwight, J., inter alia, said : "I think that where the appellants present evidence to sustain the issue prayed for, which is of such a character that, if believed by the jury, their verdict for the appellants would be sustained the demand for an issue should be granted ; and more especially is this the case, when their testimony is met by counter-testimony for the appellees, for there is then clearly a dispute upon material matters of fact which the jury may settle one way or the other as they credit the witnesses. The evidence in this cause is that the testator made his will about sixteen hours before his death ; that he was living with the principal legatee in unlawful relations ; that while his brothers, if I read the testimony rightly, were excluded, she was present in his sick room up to the time when a gentleman of the bar, who had been sent for to draw the will of the testator, entered it to receive his instructions ; that while this gentleman was drafting the will this legatee was alone with the testator for half an hour ; that at the end of that time the executor, whose son was also a legatee, having been informed by the legatee in question that testator desired to marry her, went into the testator's sick room, had an interview with him, and on coming out again told the appellants that he had fixed the matter, and told the legatee that the contemplated marriage need not or ought not to go any further, because she was already well provided for by the will. I think that these facts, taken in connection with the illicit position of this legatee, and her manifestly increased influence over the testator during the last few months of his life, should be laid before a jury, in order that they might determine how far the principal legatee prompted or how far she and the executor united in controlling the testator's mind in his testamentary dispositions. As the request for the issue must be refused, and as Judge Hanna is clearly of the opinion that the decree of the register should not be reversed, I would only add that upon the appeal the decree of the register is affirmed."

In his opinion Hanna, J., inter alia, said :

" We agree there is no evidence of testamentary incapacity, but differ as to granting the issue upon the second proposition submitted by the appellants. For myself, I am of opinion that the evidence is not of such a character as to warrant submitting the question to a jury. I do not discover any evidence that undue, illegal, or improper influence was exerted upon the mind of the testator in the very act of making the testament, nor at any other time. While it is true that he and the principal legatee were living together as husband and wife, without the marriage ceremony having been solemnized, yet this is no evidence of nor does it raise any presumption of itself that she exercised any improper influence or control over the mind of the testator. Proof of an unlawful relation must

[Wainwright's Appeal.]

be accompanied by evidence of some act of persuasion, solicitation or controlling power over the mind, will and judgment, whereby the testator was forced or induced to dispose of his estate in a manner different from that which he would have selected if he had been a free agent.

" There is no proof of any act of the principal legatee tending in this direction, nor is there any evidence that the executor, who was the senior partner of the testator, used any improper means or influence to induce testator to dispose of his estate otherwise than he, of his own volition and pleasure, intended. It was not illegal or improper for Mr. Trimble to suggest to and advise with the testator as to the disposition of his property or the object of his bounty, and if this can be gathered from the testimony, it shows that his efforts all tended to reconcile testator to the wishes and objections of his brothers, the appellants, to his proposed marriage with the principal legatee.

" I also understand the rule to be that if the question of fact be unsupported by sufficient evidence the court should refuse the issue. A mere scintilla of proof is not sufficient to entitle a party to his issue.

" But the evidence must be such that if an issue be granted, and a jury should find a verdict against the will, we, if sitting in a court of law, would be satisfied that the finding was in accordance with the evidence or the weight of the evidence, and would refuse to disturb the verdict.

" As was said by PAXSON, J., in Cauffman v. Long, 1 Norris 72, ' a man's will, the most solemn instrument he can execute, shall not be set aside without any sufficient evidence to impeach it.' See also De Haven's Appeal, 25 P. F. Smith 337 ; De Puy's Estate, 1 W. N. C. 212 ; Will of Ellen DeB. Shaw, Id. 332.

" To my mind the evidence clearly shows that the will of William Wainwright was the free, uncontrolled and voluntary expression of his wishes for the future disposition of his estate. It was prepared by his counsel in accordance with instructions received in the solitude and silence of the death chamber. No one was present to solicit or suggest a benefaction, and the testator, alone with his counsel, calmly remembers and seeks to befriend those who he believed would appreciate his gifts and had won his heartfelt esteem.

" Being of opinion, therefore, that the evidence, if submitted to a jury would not justify a verdict against the will, I think that the demand for an issue should be refused, and the appeal dismissed."

O'Brien, J., did not sit during the argument of the cause, and the court being equally divided, the appeal was dismissed.

The letter of May 2d 1874, referred to in the opinion of this court, was a long letter, wherein the residuary legatee charged that about seventeen years theretofore, the testator had encompassed

her seduction; referred to the writer's attempts to conceal her shame; to her flight to the south; to the birth of a child as the fruit of their intercourse; to the death of this child; to her being forced to live a life of prostitution; to the life of torture she had lived and was still living, and after alluding in the most endearing terms to the testator, begged him by all that was good not to despise her; to protect her and take her from the hellish life, the slough she was in. The testimony on both sides was very voluminous. From the time the residuary legatee commenced to live with testator, it appeared she in every way endeavored to atone for her past life; was constant in her attentions to him; made herself useful to him; induced him to abstain from drinking, to which he had been addicted; read his Bible to him and herself attended church regularly, and in her general deportment bore herself as his wife, and as such was recognised by a number of people and to some introduced as his wife by the testator himself.

From the decree of the court refusing the issue and affirming the register's decision the appellants took this appeal.

*Arthur M. Burton* and *George W. Biddle,* for appellants.—The court is bound to award an issue if there is a material fact in dispute: Cozzens's Appeal, 11 P. F. Smith 196. The effect of such an improper relation as existed between these parties was a question of fact for a jury: Main *v.* Ryder, 3 Norris 217. The testator labored under a delusion that he had seduced the legatee, as she had falsely charged in her letter, and can it be said that the influence of this charge was not operating on his mind when he made his will. He stated to several witnesses that he had seduced her, and this thought seems to have moved him in the care and provision he made for her. It is not unreasonable to suppose, therefore, that it was the controlling agency which influenced him in making his will. It should have been submitted to a jury to determine whether this false charge of seduction was not an undue influence: Monroe *v.* Barckly, 17 Ohio N. S. 302; Dean *v.* Negley, 5 Wright 312. It is immaterial when the undue influence was applied, if it continued to operate as a controlling cause at the making of the will: Taylor *v.* Wilburn, 20 Mo. 306; Davis *v.* Calvert, 5 Gill & Johns. 269; Reeme *v.* Parthemere, 8 Barr 460.

We contend that these then were the influences which were operating on the testator when he made his will: 1st. The unlawful relations which gave her power and control over him when in apparent health. 2d. The belief that he had seduced her when she was a young girl. 3d. The desire to compensate her for the wrong that he supposed he had done. 4th. The fact that he was about to die, and the desire natural with him to make his peace with his maker, which was aided by the religious influences that Amanda caused to be thrown around him. 5th. The persuasive

power and influence over him of her attentions to him at that time. 6th. His inability, from the advanced stage of his disease, to resist her importunities.

*John Q. Lane* and *F. Carroll Brewster*, for appellees.—No will can be avoided because the existence of an unlawful influence is proved, unless such influence is unduly exerted over the very act of devising. It must be a present constraint operating directly on the mind of the testator: Dean *v.* Negley, 5 Wright 317; Mc-Mahon *v.* Ryan, 8 Harris 329; Eckert *v.* Flowry, 7 Wright 51; Thompson *v.* Kyner, 15 P. F. Smith 368. The letter complained of was drafted by the testator himself, and was copied and signed by the legatee at the testator's request. It was written with the avowed purpose of deceiving his partner in order to win his good opinion for the legatee. Improper relations between testator and legatee do not create a presumption in law of undue influence: Rudy *v.* Ulrich, 19 P. F. Smith 177; Main *v.* Ryder, 3 Norris 217. But the relations here were not improper; they lived as man and wife.

Chief Justice SHARSWOOD delivered the opinion of the court, March 17th 1879.

It is strongly contended that there were disputed facts disclosed by the evidence from which the jury might have found that an undue influence was exerted over the mind of the testator. It is clearly settled that the constraint which will avoid a will must be one operating in the act of making the will. Threats, violence or any undue influence long past, and not shown to be in any way connected with the testamentary act are not evidence to impeach a will: McMahon *v.* Ryan, 8 Harris 329; Eckert *v.* Flowry, 7 Wright 417; Thompson *v.* Kyner, 15 P. F. Smith 368. In an issue *devisavit vel non* on the allegation of undue influence by the mother of an illegitimate child, the legatee in the will, the unlawful cohabitation of the mother with the testator is not of itself sufficient evidence from which a jury could infer undue influence: Rudy *v.* Ulrich, 19 P. F. Smith 177. It is true that if there are other facts, unlawful cohabitation may be a circumstance of weight: Dean *v.* Negley, 5 Wright 317; Main *v.* Ryder, 3 Norris 217. In the case before us there was not a scintilla of evidence of the exertion of any influence over the mind of the testator in the testamentary act. His capacity was perfect, the act was free and voluntary; a respectable member of the bar was called in; everybody was excluded from the room when his instructions were given, and the will when afterwards drawn in form was executed in the presence of the two witnesses who attested it. There was never a case in which a will was executed less liable to exception on this ground. It is true that the testator and the

[Wainwright's Appeal.]

residuary legatee had never been lawfully married. But for a year, at least, he had cohabited with her as his lawful wife, acknowledging her to be such. He was not on good terms with his brothers and sisters, the present contestants, and on many occasions had expressed his intention of providing for the residuary legatee. It is contended, however, that she had falsely represented to the testator that he had seduced her. It is more than doubtful whether the letter of May 2d 1874, so much relied on by the appellants, was not the testator's own work, intended to justify him in the eyes of his friends in living with the woman, and it is difficult to believe that he was deceived by it. But concede it to be as contended. How can it by itself justify the conclusion of undue influence in the testamentary act? Say that it was intended by her to induce him to remove her from the condition of a common prostitute and take her under his protection. Why might not her care and attention, her faithful performance of all the duties of a wife, though she did not bear the lawful relation, making his home peaceable and comfortable, produce in him a natural and legitimate affection for her sufficient to account for the not unreasonable provision made for her in his will? It is clear to us that this circumstance alone is not sufficient to justify a jury in finding a verdict against the will. If, upon the whole evidence such a verdict ought not to be allowed to stand, an issue ought not to be awarded. Upon a careful examination of all the testimony this is our conclusion.

Decree affirmed, and appeal dismissed at the costs of the appellants.