## Mitchell, Appellant, *v.* Spaulding.

*Lunacy —Inquisition—Effect of the return—Contract—Act of June 13, 1836, P. L. 592.*

The effect of the return of an inquisition finding the subject of the inquiry a lunatic is to take out of the hands of the person so found to be incapacitated the control and management of all property. He cannot, so long as the finding of the inquisition remains unreversed, make any contract involving his estate. The finding of the inquisition, after its return, is conclusive of the question of the capacity of the alleged lunatic until revoked.

*Lunacy—Sale of real estate pending traverse—Notice to next of kin.*

The various provisions of the Act of June 13, 1836, P. L. 592, give to the court of common pleas jurisdiction to decree, in a proper case, a sale of the real estate of an alleged lunatic after a return of an inquisition finding him to be insane, and during the pendency of a traverse; but no such sale can be decreed unless notice of the intended application is given to the next of kin of the lunatic capable of inheriting the estate. If the next of kin is a minor, some one competent to represent him must be appointed. Service upon the father of the minor, who is not the guardian of the minor, nor of the blood of the alleged lunatic, is insufficient.

Argued Feb. 13, 1902. Appeal, No. 41, Jan. T., 1902, by plaintiff, from judgment of C. P. Bradford Co., Feb. T., 1899, No. 177, non obstante veredicto in case of Charles W. Mitchell v. Allen A. Spaulding. Before RICE, P. J., BEAVER, ORLADY, W. W. PORTER and W. D. PORTER, JJ. Reversed.

Ejectment for land in Leroy township. Before DUNHAM, P. J.

The facts are stated in the opinion of the Superior Court.

Verdict for plaintiff subject to questions of law reserved.

The court entered judgment for defendant non obstante veredicto.

296, (1902).]       Arguments—Opinion of the Court.

*J. T. McCollom,* and *T. S. Hickok,* for appellant.—It has been decided that the court of common pleas has no jurisdiction over the estates of a lunatic, except under the provisions of the act of June 13, 1836: Halderman v. Young, 107 Pa. 324.

There was no authority to order a sale: Bennett v. Hayden, 145 Pa. 586; Rosevelt v. Fulton, 7 Cow. (N. Y.) 81; Duncan v. Hartman, 143 Pa. 595; Warden v. Eichbaum, 14 Pa. 126.

There was no notice to the father of the child: Bennett v. Hayden, 145 Pa. 586; Ervine's Appeal, 16 Pa. 263.

*J. W. Stone,* with him *Lee Brooks* and *W. C. Sechrist,* for appellee.—The court had jurisdiction to order the sale: Clark's Case, 22 Pa. 466; Shaffer v. List, 114 Pa. 486; Misselwitz's Lunacy, 177 Pa. 359; Guthrie's App., 16 Pa. 321; Warden & Alexander v. Eichbaum, 14 Pa. 121; Ebling's Estate, 134 Pa. 227; Lockhart v. John, 7 Pa. 137; Bladen v. Phila., 60 Pa. 464; Pittsburg v. Coursin, 74 Pa. 400; Norwegian Street, 81 Pa. 349; Yaple et al. v. Titus et al., 41 Pa. 195; Davidson's Appeal, 170 Pa. 96; Halderman v. Young, 107 Pa. 324.

What is due notice is a matter of discretion with the court, who granted the order of sale, and cannot well be termed a failure to comply with any mandatory provisions of the act of assembly: Elwyn's App., 67 Pa. 367.

OPINION BY W. D. PORTER, J., April 28, 1902:

There was a verdict for the plaintiff, but the court entered judgment in favor of the defendant non obstante veredicto, upon a question of law reserved.   The question reserved involved only the legal effect of the record of a proceeding in lunacy, and a sale of the land in question under an order of the court of common pleas in that proceeding.   The title of the defendant was dependent upon the validity of the sale in the lunacy proceeding.   If the court of common pleas had jurisdiction to decree the sale, upon the face of the record as it then stood, the judgment of the court below must be affirmed.   The record upon which the defendant relied established that by inquisition duly returned on August 24, 1896, in accordance with the provisions of the Act of June 13, 1836, P. L. 592, Hanford L. Spaulding was found to be a lunatic; that on the same day Charles E. Bullock was appointed committee of the person and

estate of said lunatic and gave security, as required by the statute, which was approved by the court; that on September 19, 1896, the alleged lunatic traversed the inquisition; that on October 2, 1896, Charles E. Bullock, the committee, presented his petition to the court of common pleas alleging that the personal estate of said lunatic was not sufficient to pay his debts and praying for an order to sell the real estate in question, that the court made an order authorizing and directing the committee to sell said real estate; the committee made a return to said order that he had sold the land to Allen A. Spaulding, which sale was confirmed by the court, and a deed made in accordance therewith. The validity of this sale is attacked upon two grounds, viz: (1) That the court had no jurisdiction to decree a sale of the real estate while the traverse of the inquisition by the alleged lunatic was pending; (2) that it appeared upon the face of the record that notice of the intended application to sell the real estate had not been given to the next of kin.

The effect of the return of an inquisition finding the subject of the inquiry a lunatic is to take out of the hands of the person so found to be incapacitated the control and management of all his property. He cannot, so long as the finding of the inquisition remains unreversed, make any contract involving his estate. The finding of the inquisition, after its return, is conclusive of the question of the capacity of the alleged lunatic until revoked: Clark v. Caldwell, 6 Watts, 139; Bixler v. Gilleland, 4 Pa. 156; Imhoff v. Witmer's Administrator, 31 Pa. 243. These cases conclusively establish that the contractual capacity is not restored during the pendency of a traverse of the inquisition. The incapacity of the lunatic, during the period of the contest involved in determining the traverse, made it necessary that the law which took from him the power to manage his own affairs should supply a guardian having power to take care of his person and collect, manage and dispose of his estate. The 13th section of the act of 1836 met this necessity, by enacting that: "It shall be lawful for the court after the return of the inquisition as aforesaid, notwithstanding any traverse of the same that may be pending, to make such orders touching the care and custody of the person, and the management and safekeeping of the estates of any person, so found to be a lunatic or habitual drunkard, as they shall think

necessary and proper." This section does not give to the courts unlimited power, but it commits the estate to the control and disposition of the court during the pendency of the contest: McGinnis v. Commonwealth, 74 Pa. 245. The lunatic is in effect the ward of the court, and his estate is in custodia legis. So far as his estate will justify it, he and his family should be provided for as he himself would provide for them if he were sane : Guthrie's Appeal, 16 Pa. 321; Shaffer v. List, 114 Pa. 486 ; Hambleton's Appeal, 102 Pa. 50. The committee is the agent of the law to manage the estate and care for the unfortunate owner in the manner contemplated by the various provisions of the statutes which regulate the discharge of the duty. The management of the estate involves making provision for the maintenance of the lunatic and his family and the taking of such measures as are necessary to provide for the payment of the lawful debts of the estate. The "management" of the estate contemplated by the section of the statute above quoted might from the words of the section seem to be absolutely committed to the discretion of the court of common pleas, but the powers intended to be conferred by that section are to be ascertained from a consideration of all the provisions of the statute, and the manner in which the power is to be exercised is to be ascertained from the sections of the act which follow. That section means that the powers conferred upon the court by the statute are not to be suspended during the pendency of the traverse. After inquisition found, the court of common pleas has acquired jurisdiction of the estate of the alleged lunatic and may make orders and decrees respecting its custody, management or sale : Yaple v. Titus, 41 Pa. 195 ; Ebling's Estate, 134 Pa. 228; Gensemer's Estate, Davidson's Appeal, 170 Pa. 96. The question here presented does not seem to have been directly involved in the cases cited, but the analogies can lead to but one conclusion. We are of opinion that a reasonable construction of the various provisions of the act of 1836 must recognize the jurisdiction of the court of common pleas to decree, in a proper case, a sale of the real estate of an alleged lunatic after a return of an inquisition finding him to be insane and during the pendency of a traverse.

The jurisdiction thus conferred involves the exercise of a power to sell the property of a living man for the payment of

debts which have not been judicially ascertained. The courts of common pleas are vested with a discretion which it is fair to presume they will exercise with the highest degree of caution. The committee ought, in such a case, to make a careful inquiry and fully disclose the facts to the court, including the fact that a traverse is pending if such is the case. The statute does not make explicit provision for notice to the alleged lunatic that his real estate is to be sold, this may have been because of his presumed incapacity. The 24th section of the act does provide that, " No order for the sale of real estate shall be granted, unless it appear that due notice of the intended application was given to the wife, if any, and the next of kin of the lunatic capable of inheriting the estate." This requirement is not merely directory, it absolutely prohibits the making of the order unless the provisions of the section have been complied with. The legislature, no doubt recognizing the danger involved in the exercise of the jurisdiction conferred and the helplessness of the person whose property was to be sold, made the exercise of the power absolutely dependent upon notice to the next of kin, and, that there might be no mistake as to who were entitled to notice, defined the term " next of kin " as the persons " capable of inheriting the estate." This requirement involves no hardship, the person whose property is to be sold is incapacitated, and notice must be given to those who would inherit his estate if he died at that time. This is a safeguard against the abuse of power without full inquiry as to the facts. The record in the present case showed upon its face that a minor son of Ella M. Phillips, a deceased sister of the lunatic, was, at the time the petition for the sale of real estate was presented by the committee of the lunatic, one of the next of kin within the meaning of the statute. This minor was entitled to notice, and the petition makes it clear beyond doubt that nothing like legal notice was given him. The petition was presented on October 2, 1896, and the petitioner recites, " that on September 30, 1896, he sent by registered letter notice of this intended application to be made on Friday, October 2, 1896, to Amarilla Griswald and Frank Phillips, father of an infant son of Ella Phillips." It may well be doubted whether the statement that a registered letter had been mailed only two days prior to the application, to a party entitled to receive no-

tice without stating where the letter was mailed or where the party resided or how the letter was addressed, could be held to be any evidence that the notice had been received before the application was made, but it is not necessary to consider even that question. The father of this minor was not of the blood of the alleged lunatic, nor was he the guardian of his minor son, notice to him would not have answered the requirements of this statute. This criticism cannot be answered by the suggestion that the minor was not competent to receive notice, if he was incompetent to be notified then some one competent to represent him ought to have been appointed. The provisions of the statute are not satisfied by notice to some of the next of kin, all must be notified. The jurisdiction of the court is to be determined from the facts set forth in the petition, and this petition disclosed a fact which deprived the court of jurisdiction to make an order of sale : Bennett v. Hayden, 145 Pa. 586.

The judgment is reversed and judgment is now entered upon the verdict in favor of the plaintiff and against the defendant.