## Brennan's Estate.

336

Argued April 13, 1933.  Before FRAZER, C. J., SIMP-
SON, KEPHART, SCHAFFER, DREW and LINN, JJ.

*H. W. Mumford,* of *Welles, Mumford & Stark,* with
him *Morris & Kirby,* for appellant.

*Clarence Balentine,* of *Kelly, Balentine, Fitzgerald &
Kelly,* for appellees.

OPINION BY MR. JUSTICE KEPHART, May 22, 1933:

Winifred Brennan, the testatrix, was an aged maiden
woman.  She had supported herself, working as house-
keeper, for nearly fifty years, and had accumulated a
substantial fortune.  On her retirement, she lived alone
until somewhat enfeebled, when she stayed with rela-
tives and friends until her death.  By her will, after
minor bequests to relatives and for masses, she gave the
residue of her estate to Thomas Kennedy, the husband
of her niece.  Thomas P. Brennan, a nephew of testatrix,
being dissatisfied with his aunt's will, challenged its
validity on the grounds the will was procured by undue
influence, and testatrix lacked testamentary capacity.

An issue devisavit vel non was denied by the court below, and this appeal followed.

Voluminous testimony was taken to determine the questions involved. It appears testatrix was born in Ireland and when a young woman emigrated to America, secured employment in the homes of various priests, which she continued until 1920, when, on the death of her last employer, she lived alone in Brooklyn. She was unable to write her own name, and lived most frugally in a small apartment. Her disposition was to save continuously and her determination to keep her business and financial affairs to herself was pronounced and persistent, so that, at her death, unknown to her relatives, she had, as the savings of her lifetime, about sixty thousand dollars. After living at the home of various nieces and friends, in March, 1926, she moved to Mrs. Teague's home in Brooklyn and while there made her will on June 11, 1926, under the following circumstances:

At testatrix's request Thomas Kennedy went to Brooklyn and accompanied decedent to the office of a reputable attorney of her own choice, M. J. Horan, whom she had twice previously consulted, for the purpose of drawing a new will. While at the office, Kennedy remained in the anteroom, testatrix being alone with her attorney. There she gave instructions as to what the will should contain, and it was so drawn and executed by her. Kennedy knew nothing of the provisions until testatrix afterwards showed him the will. There is nothing to show that he knew the amount of her property. The will remained in her possession from the date of its execution until her death nearly three years later, when it was found in her trunk.

At the outset it may be stated there is no evidence that Thomas Kennedy or any other person exerted any undue influence in making the will. Kindly care and solicitous attention do not amount to undue influence. Advice or even persuasion while a person is a member of one's household is not improper. Legitimate family and so-

cial relations are not prohibited though provisions of a will are thereby influenced and affected; such results are their natural and proper products: Dean v. Negley, 41 Pa. 312. "Undue influence" connotes control of testatrix's mind at the time and in the very act of making the will: Tetlow's Est., 269 Pa. 486; Kustus v. Hager, Id. 103. There must be a present, operating and effective restraint upon the will of testatrix in the testamentary effectuation: Keen's Est., 299 Pa. 430; Tetlow's Est., supra; Phillips's Est., 244 Pa. 35; Eckert v. Flowry, 43 Pa. 46; Wainwright's App., 89 Pa. 220; McMahon v. Ryan, 20 Pa. 329. There was no compulsion or restraint on testatrix's mind when the will was made, or at any other time.

Concerning her testamentary capacity at the time she executed her will, many witnesses and much testimony were produced on both sides. On April 8, 1924, at the instigation of a niece, Mrs. Burke, Miss Brennan was adjudged insane by the Supreme Court of New York, and committed to a state hospital for treatment; she remained there only two days, being thereafter paroled for six months in the custody of Mrs. Smith, a friend. A month later, by permission of the authorities, she came to the home of a niece in Carbondale, and at the end of the parol was discharged by the hospital authorities. The record in the proceedings was introduced, and it showed the commitment was ordered on April 8, 1924, more than two years before the execution of her will on July 12, 1926.

Appellant urges that the decree adjudging Miss Brennan insane is conclusive for all future purposes, citing Klohs v. Klohs, 61 Pa. 245; Mitchell v. Spaulding, 20 Pa. Superior Ct. 296; that the acts of a lunatic are void, citing Imhoff v. Witmer's Admr., 31 Pa. 243; and, under article IV, section 1, of the Federal Constitution, full faith and credit must be given this decree in the proceeding now before the court.

Appellant misapprehends the effect of the constitutional provision as it relates to this decree of insanity. For certain purposes and under certain conditions the decree would be conclusive. It is a general rule that when the testamentary capacity of one who has been adjudged insane by a court, or has in fact been insane without such adjudication, is challenged, if at the time the will was made the party had a lucid interval, the will stands. An adjudication of insanity is not conclusive of testamentary incapacity: Sterrett's Est., 300 Pa. 116, 122; Hoopes's Est., 174 Pa. 373. Testatrix may have been insane at the time adjudged so, but that is not conclusive as to her testamentary capacity two years later. She may well have become infinitely worse, had lucid intervals, or wholly recovered by that time. Moreover, even under this decree it is apparent Miss Brennan was not insane to the degree appellant's argument indicates. Her confinement was more for observation than treatment. Two days after entering the hospital testatrix was paroled, she never returned, and was discharged as a matter of course six months later. The hospital records indicate, and the receiving physician who examined testatrix when she entered, testified that she was physically in good condition for one of her age, seemed to be in an upset state of mind because of her then situation, but was friendly, rather jovial, and he could not understand why she had been put in a hospital. She realized the nature of the place, oriented herself readily, and protested at being there. The doctor concluded that he thought she would have sufficient understanding and capacity to make a will on July 12, 1926.

However, once incompetency of whatever type is shown by an adjudication or otherwise, lack of testamentary capacity is not conclusively established for a later time even though testator had lived and died in a hospital: Watmough's Est., 25 Pa. Dist. 106; Macauley's Est., 224 Pa. 1. The effect of a prior adjudication of incompetency is to cast upon the proponents the

burden of showing capacity at the time of making and executing the will: Hoopes's Est., supra.

Proponents introduced two classes of evidence to substantiate testamentary capacity at the time the will was executed: (1) Evidence that testatrix had had such capacity for a reasonable time before and after the time of execution of the will; (2) Evidence that testatrix had such capacity at the time of making the will. The evidence under the first class consisted of the testimony of two nieces, neither of them beneficiaries under the will, showing that from the time testatrix was removed from the hospital until the time of her death she was able to live the normal life of a woman of her age, talked intelligently, transacted her own business and took care of herself. Decedent lived with one of these nieces for over a year after she left the hospital, and was seen by both of them frequently from then until her death. To corroborate this testimony was that of the husband of one of these nieces, and the wife of a nephew of decedent, neither of whom was a beneficiary in the will. In addition, there is the evidence, heretofore mentioned, of the doctor, senior assistant physician at the state hospital, who qualified as an expert in mental cases, and refreshed his recollection from his notes of his observations made at the time testatrix was admitted to the hospital; the testimony of three physicians who had attended testatrix in 1926 and took care of her in her last illness, all to the effect that testatrix answered all questions intelligently and appeared perfectly normal, made responsive answers and seemed mentally perfectly clear.

The evidence under the second class, relating to capacity when the will was drafted, consisted of the testimony of Thomas Kennedy, the residuary legatee, and of M. J. Horan, Esquire, the attorney who drew the will. Both of them testified candidly as to the intelligence, memory and capacity of testatrix. The attorney was most reputable and experienced. We have frequently indicated that the testimony of the draftsman of a will,

especially if he be a lawyer, is always important: Kustus v. Hager, supra; Snyder's Est., 279 Pa. 63; Phillips's Est., supra; Kane's Est., 206 Pa. 204. The inference is, when a will has been prepared by counsel without the interference of any person, that the will was properly made by a person of testamentary capacity. This inference can only be overcome by clear, definite and weighty evidence of facts irreconcilable with the possession of testamentary capacity: Morgan's Est., 219 Pa. 355.

Opposed to this testimony is that of numerous witnesses, for the most part nephews and nieces of testatrix, who testified as to decedent's condition about the time she was committed to the hospital and up to the first of January, 1926; the testimony of a physician, a specialist in mental diseases, who saw decedent for half an hour in 1924, to the effect that she was then suffering from senile dementia. He was unable to recall any of the details and had no notes by reference to which he could refresh his recollection. In addition was the record referred to above of the proceedings committing testatrix to the state hospital. Much of the evidence introduced was objected to because it dealt with the testatrix's condition before and after the execution of the will, but evidence of the condition of a person, whose testamentary capacity at the time of making the will is challenged, for a reasonable time before and after the making of the will, is admissible as indicative of the condition on the particular day: Aggas v. Munnell, 302 Pa. 78; Rubins v. Hamnett, 294 Pa. 295.

It may be that testatrix was peculiar, over thrifty, even penurious or parsimonious; she was undoubtedly secretive and uncommunicative about her personal affairs; she had her distinct likes and dislikes which undoubtedly influenced the disposition of her property. We said in Null's Est., 302 Pa. 64, at 66: "Capacity relates to soundness of mind, or in other words a mind that has full and intelligent knowledge of an act en-

gaged in, an intelligent perception and understanding of the dispositions made of property, and the persons and objects one desires shall be the recipients of one's bounty: Lawrence's Est., 286 Pa. 58, 65. Old age, sickness, distress or debility of body do not prove or raise a presumption of incapacity (Wilson v. Mitchell, 101 Pa. 495), nor do inability to transact business, physical weakness, peculiar beliefs and opinions, or failure of memory: Lawrence's Est., supra, and authorities there cited. Want of mental capacity affects all transactions, and while, generally speaking, it requires more business judgment to make a gift than to make a will, as the former is immediately active while the latter is prospective, still incapacity as a fact must appear before the gift can be set aside." We agree with Justice PAXSON'S remark in Cauffman v. Long, 82 Pa. 72, 77: " . . . . . . a man's prejudices are a part of his liberty. He has a right to them." The reasons why testatrix made the disposition of her property which she did, need not be given by her: Caughey v. Bridenbaugh, 208 Pa. 414; McNitt's Est., 229 Pa. 71. "A person of disposing mind may make an unjust will": Aggas v. Munnell, supra.

We have refrained from mentioning a circumstance which is of profound significance in revealing the true merit of appellant's standing in court. It appears from the testimony of disinterested witnesses that appellant in May of 1929 attempted to forge a will purporting to be that of testatrix. He prepared almost exact duplicates of the will before us, and asked one of the witnesses, a married woman, to sign her maiden name, she being unmarried just before Miss Brennan made her will. When she demurred he said: "You don't need to worry; if this thing goes through there is $1,000 for you." This evidence was not impeached on cross-examination, and was denied by appellant only. It is scarcely necessary to comment on the effect of this testimony on contestant's credibility as well as on the good faith of this proceeding. Such conduct may entirely destroy

what might otherwise be a strong case; but here the evidence falls far below that necessary to secure an issue devisavit vel non. We conclude that the result reached by the court below was correct.

Decree affirmed, costs to be paid by appellant.