## Morrish Estate.

Argued December 13, 1944. Before KELLER, P. J., BALDRIGE, RHODES, HIRT and RENO, JJ. (JAMES, J., absent).

*Robert B. Brunner,* with him *Samuel D. Conver,* for appellants.

No one appeared or filed a brief for appellee.

OPINION BY HIRT, J., January 25, 1945:

We are all of the opinion that this case does not present an occasion when a court, though adopting the findings of a jury, is justified in setting aside the will of a testator.

Clara Morrish died on May 15, 1943. On appeal from the probate of her will dated February 19, 1943, the judge specially presiding in the lower court submitted an issue devisavit vel non to a; jury empaneled in the orphans' court under the Act of July 1, 1937, P. L. 2665, 20 PS 2585. At the trial the request of proponents of the will for a directed verdict was declined and the jury in answer to questions submitted by the trial judge made special findings to this effect: That testatrix when she made her will did *not* have testamentary capacity, and that the will *was* induced "by undue influence, practiced upon her." On proponents' motion for judgment n. o. v. the trial judge, expressing more than doubt as to the sufficiency of the proof of incapacity, approved the finding of duress, and on that ground entered judgment on the verdict and set the will aside. Distribution of the estate was ordered under the intestate laws, with the exception of two bequests, one to a church and the other to a; cemetery, which were considered effective because they had appeared in a prior will. The form of the order is unimportant in the light of our conclusion that the will is valid as a whole.

There is nothing in the Orphans' Court Act or in its amendments which disturbs the established practice

of a hearing before a judge of the orphans' court to determine preliminarily, whether there is a substantial dispute as to the status of the will, raising an appropriate issue for a jury. There was no separate hearing in this case. The jury was sworn and the testimony was heard by the judge as chancellor (*Geist's Estate*, 325 Pa. 401, 191 A. 29) and by the jury at the same time. At the close of the proofs the questions of testamentary capacity and undue influence were submitted to them.

When issues in a contested will case are sent for trial to the common pleas under §21(a) or (b) of the Orphans' Court Act of 1917, 20 PS 2581, 2582, the facts found by the jury must be accepted by the orphans' court as conclusively established, so long as the verdict of the jury stands undisturbed. *Cross's Estate*, 278 Pa. 170, 122 A. 267; *Tranor's Estate*, 324 Pa. 263, 188 A. 292. Subsection (d) of the 1937 amendment was an addition to §21 of the act and did not interfere with the power of the orphans' court to certify issues to the common pleas. The amendment was intended merely to supply an alternate method, at the choice of the court, of obtaining a verdict of a jury on substantial issues in dispute. The judgment on a verdict of a jury in the orphans' court, also, is conclusive on the court unless set aside. The 1937 amendment provides: "The entry of judgments in such cases shall have the same force and effect and be subject to appeals in the same manner as appeals in like cases are now taken in the common pleas courts from judgments on issues certified by the orphans' court, except that only one appeal shall be taken and that from the final decree of the orphans' court, upon which appeal all alleged errors may be assigned, whether arising in the jury trial or otherwise."

It is still the duty of a judge to refuse to present a question to a jury, either in the common pleas or the

orphans' court, "unless he feels the ends of justice call for a verdict against the will, or he is so uncertain on this point that he could conscionably sustain a finding either way on one or more of the controlling issues involved": *Mark's Est.*, 298 Pa. 285, 148 A. 297; *De-Laurentiis's Est.*, 323 Pa. 70, 186 A. 359. Once the dispute is submitted to a jury, the power of the chancellor himself to decide the issues in the exercise of his reasonable discretion (*Hile's Estate*, 310 Pa. 541, 166 A. 575) is at an end.

The provision of §21(b) that "the facts established by the verdict returned shall not be reexamined in any appeal" (stemming back to the Act of March 15, 1832, P. L. 135) is in furtherance of the principle that the finding of facts by a jury are not advisory merely. *Cross's Estate*, supra. The orphans' court could not, therefore, nor may we, reexamine the facts and set aside the findings whether in agreement with them or not if they are supported by the evidence. But the question whether the evidence, in the light of the verdict, is sufficient to sustain the findings is a question of law reviewable in an appeal on motion for judgment n. o. v. The Act of April 22, 1905, P. L. 286, 12 PS 681 is equally applicable to trials by jury in the orphans' court as in the common pleas.

Decedent at the time of her death was 75 years old and was unmarried. In the will in question she ignored her nephews and nieces (her next of kin), and, subject to the payment of her debts, gave $200 to a church, $100 to a cemetery, and $300 to Alderfer Home where she had been cared for shortly before her death. The entire residue and remainder of her estate she bequeathed to Irvin D. Kratz and Carrie Waldecker, in equal shares. Neither of them was related to her.

On the question of her capacity, there is testimony that testatrix had been failing for some time prior to her death, physically as well as mentally with signs of senility. At times she was forgetful, timid, and men-

tally confused. But she had recently sold her house and she knew the sale price—almost her entire estate—and that the proceeds had been deposited in her name in two savings accounts in a bank. Up to the time when the will was made it was physical disability and not mental weakness which prevented her from transacting her other small business affairs; her conversations were intelligent and letters written by her, the last in March 1943, were coherent. We agree that this will may not be set aside for lack of testamentary capacity. Cf. *Brennan's Estate*, 312 Pa. 335, 168 A. 25; *Olshefski's Estate*, 337 Pa. 420, 11 A. 2d 487. The presumption of testamentary capacity has not been overcome; on the contrary it has been established that testatrix was mentally capable.

The testimony of undue influence also is insufficient to upset the will. Decedent lived alone and earned her own living. Both of the residuary legatees had been kind to her not only during her decline but over a long period. Mrs. Waldecker had been a friend for twenty-five years and had performed many small friendly services. She and decedent had worked together in the same employment and they had interests in common. Kratz was a real estate dealer who for more than fifteen years had collected the rents from tenants in the house owned by testatrix. He was entrusted with the custody of a former will which she had made. After she become physically helpless in January 1943 he, but always at her requests, arranged for withdrawals from her bank accounts and paid her bills for her. The few withdrawal orders signed by her never exceeded in amount the bills which he paid. She was moved to the Alderfer Home, a private home for the aged and for convalescents, on February 3, 1943. She then decided to sell her home and Kratz found a purchaser. He charged her no more than the usual commission. While at the Alderfer Home she decided to change her will. She discussed with Kratz a suggestion made to her by the Alderfers

that she loan them the proceeds of sale of her home and make them the beneficiaries of her entire residuary estate in satisfaction of the loan. His reaction was that a bequest of not more than $300 would be adequate and advised her to keep her money for her own use. This was good advice and would not be evidence of undue influence from any source. Later, decedent sent for Kratz and told him to bring her old will with him. At her suggestion he noted changes in the margin of the former will and arranged with a lawyer to draw a new will embodying the bequests directed by her. When prepared, Kratz took the will to the Alderfer Home. He gave it to two of decedent's friends and asked them to go to her room and read the will to her. After hearing it read she approved the will as drawn; Kratz was then summoned and he was present only at its execution; her two friends signed as witnesses. Decedent died shortly thereafter; her death was hastened by a subsequent broken hip in a fall. Pneumonia was the immediate cause of death.

We are of the opinion that the testimony is insufficient to establish that the relationship between Kratz and testatrix was confidential in a legal sense. Aside from collecting her rents and selling her home which were purely business transactions, the small service of paying her few bills for her might have been performed by any person of her acquaintance. And though the fact that she gave her prior will, and possibly her bank books to him for safe keeping, indicates she had confidence in him, yet it does not establish that the relation between them was confidential. A confidential relationship does not exist as a matter of law between real estate agent and client and in our view the evidence did not raise an issue for the jury as to its existence in this case. Intimate contact between Kratz and testatrix aside from purely business transactions related to small friendly acts which he was asked to perform. He was not entrusted with supervising her affairs and as far

as the evidence goes his advice was not sought éxcept in the one instance above noted. And giving due weight to the testimony of impaired mental or physical capacity we are of the opinion that the evidence is **insufficient** to shift the burden upon proponents of **proving** that testatrix was not unduly influenced in making **her** will. The charge is rebutted by the circumstances **and** the testimony establishes no more than the opportunity for Kratz to attempt to exert influence; in our **view it** does not raise a suspicion that he did. Evidence **of** weakness of mind is not sufficient, without more, **to** make out even a prima facie case of undue **influence.** *Cookson's Estate*, 325 Pa. 81, 188 A. 904. There is **no** suggestion from the evidence that Mrs. Waldecker influenced testatrix in any degree.

"In order to constitute undue influence sufficient **to** void a will, there must be imprisonment of the body **or** mind ...... fraud or threats or ...... physical **or** moral coercion, to such a degree as to prejudice the mind of the testator, to destroy his free agency and **to** operate as a present restraint upon him in the making of the will": *Phillips' Est.*, 244 Pa. 35, 90 A. 457; *Geho's Estate*, 340 Pa. 412, 17 A. 2d 342; *Cressman Estate*, 346 Pa. 400, 31 A. 2d 109. A number of **cases,** where the evidence was found insufficient to establish duress, have factual elements in common with the present appeal, among them, *Keen's Estate*, 299 Pa. **430,** 149 A. 737; *Miller's Estate*, 265 Pa. 315, 108 A. **616;** *Mark's Estate*, supra.

Decree reversed; judgment is entered in favor of proponents n. o. v.; the petition for an issue devisavit vel non is dismissed and the probate reinstated at the costs of the estate.