Fay Estate.

Argued April 20, 1948. Before RHODES, P. J., HIRT, RENO, DITHRICH, ROSS, ARNOLD and FINE, JJ.

*A. Grant Walker,* with him *Gifford, Graham, Mac-Donald & Illig,* for appellant.

*Thomas E. Doyle,* for appellee.

OPINION BY ARNOLD, J., July 23, 1948:

This appeal is from the refusal of the orphans' court of an issue devisavit vel non.

Katheryne J. Fay died November 23, 1946, and her will dated July 17, 1945, was probated. Under it, after some merely token legacies, she gave the residue of her estate to Dr. J. A. Root and named him executor. On the same date she conveyed to Dr. Root an apartment building in Erie, but in which she continued to reside until her death. Dr. Root was not related to her.

Roy Keefer and his wife, Mary, lived in Cleveland, and for many years had known the decedent, who was maid of honor at their marriage. The decedent and the Keefers had visited back and forth for some years, and in 1941 for several months Mary Keefer had, at Miss Fay's request, resided with her and aided in the work of the apartment house. Mary Keefer's birthday was the second of February and the decedent's was the fourth of February, and they customarily exchanged birthday gifts.

In the month of February, 1946, the Keefers left for Texas and did not return until July. They sent Miss Fay a Christmas card in 1946, and Dr. Root then advised them of her death.

In January, 1947, the Keefers brought forward Katheryne Fay's holographic will dated February 1, 1946, and executed at Cleveland. They took an appeal from the probate of the earlier will, praying that the later will be admitted to probate. After the taking of some testimony Dr. Root then petitioned for an issue devisavit vel non. The testimony was completed and the orphans' court refused the issue, holding that there was no substantial dispute, and that a verdict against the second will would have to be set aside. This later will was admitted to probate and Dr. Root took this appeal.

Appellant's motion for the precept for an issue averred: (1) That the second will was not the testatrix's; (2) that decedent was not in Cleveland on February 1, 1946; (3) that decedent lacked testamentary capacity on that date.

Appellant did not and could not challenge that the holographic will dated February 1, 1946, was in the handwriting of the decedent and bore her signature.[1] Since the proponents made proof of execution by the required two witnesses, the testamentary capacity of this decedent was to be presumed, and the burden of proof of incapacity was therefore on the contestant: *Sturgeon Will*, 357 Pa. 75, 81, 53 A. 2d 139; *Wertheimer's Estate*, 286 Pa. 155, 160, 133 A. 144. The will was therefore entitled to probate unless there was a lack of testamentary capacity, there being neither allegation nor proof of any undue influence.

As to the alleged lack of testamentary capacity on February 1, 1946, appellant offered evidence that the decedent was an alcoholic, and on many occasions throughout the years was grossly intoxicated. In this

---

[1] Contestant, on cross-examination, N. T. 288, 289, testified that "it looks like it [decedent's handwriting]."

respect the case is quite similar to *Wertheimer's Estate*, 286 Pa. 155, 133 A. 144. There, as here, there was a presumption of capacity since the will and its signature were admittedly in the handwriting of the testatrix. There, as here, the burden was on the contestant to show that the testatrix was under the influence of intoxicants *at the time of the execution of such will*, and to such a degree as affected her testamentary capacity. There, as here, the testimony of the proponents and their disinterested witnesses was clear that there was full testamentary capacity. There, as here, the signature to the will was "normal, bold and firm, while her signature . . . during . . . intoxication was splattered and sprawling. . . ." Since no fraud or deception was shown there was therefore no substantial dispute as to her testamentary capacity. Cf. *Morrish Estate*, 156 Pa. Superior Ct. 394, 40 A. 2d 907; *Brennan's Estate*, 312 Pa. 335, 168 A. 25; *Sturgeon Will*, 357 Pa. 75, 53 A. 2d 139. In fact it was the signature to the earlier will and the signature on the deed to Dr. Root that were splattered and sprawling. A conflict of evidence is not sufficient to create a substantial dispute: *Sturgeon Will*, 357 Pa. 75, 80, 53 A. 2d 139. The contestant offered no testimony as to the condition of the testatrix after 1:30 P. M. on February 1, and the contestant himself stated that his testimony of her alleged intoxication related to a time not later than 1:30 P. M.[2] It may be added that the testimony of appellant's attorney shows that the contestant took a written power of attorney from Miss Fay on January 12, 1946, although under the contestant's evidence she lacked capacity at that time.

Appellant principally relies upon what may be referred to as an "alibi" that the decedent was not in Cleveland on February 1, 1946. This requires little consideration. It is not a substitute for evidence that the decedent did not write and execute the will in question,

[2] Dr. J. A. Root, N. T. 256.

which is all but admitted. The will was dated February 1, 1946, in the decedent's own hand. The presumption that this is the correct date could be overcome only by clear, precise and indubitable evidence: *Baum's Estate*, 269 Pa. 63, 112 A. 141. The "alibi" testimony did not preclude her presence in Cleveland at 11:00 P. M. Even if fully accredited, no witness testified to seeing her in Erie after 2:30 P. M. While the appellant [3] and one of his witnesses [4] took refuge in a general statement that she was in Erie all that day and evening, neither of them testified *to seeing her* after 2:30 P. M. Where a litigant (in this case, Dr. Root) fails to assert a fact which, if true, would be natural for him to assert, a presumption arises of the nonexistence of such fact. In short, the "alibi" testimony does not cover the time of the event. On the other hand, the testimony is clear, precise and positive that she wrote and executed the will at about 11:00 P. M. in the city of Cleveland, which was easy to reach from Erie by airplane, automobile or train. Not only do the two proponents testify that she was in Cleveland at that time, but they are corroborated by disinterested witnesses who saw and talked with her. There was also testimony that the decedent, on February 1, 1946, gave a check to Mary Keefer for $25.00 as a birthday gift. This check was offered in evidence. It had been deposited in a Cleveland bank on February 2, 1946. The signature of Miss Fay was bold and firm.

We have examined the evidential questions raised and fail to find them meritorious or to require discussion.

Appellant complains that the two common pleas judges of Erie County should, with the orphans' court judge, have constituted the court en banc to hear this matter. But the orders of the Court of Common Pleas and of the Orphans' Court of Erie County, permitting a member of either court to sit in the other, were for convenience and the dispatch of business. These orders did

---

[3] Dr. J. A. Root, N. T. 176.
[4] L. D. Eggleston, N. T. 264, 265, 266.

not give to the common pleas judges a fixed tenure as members of the orphans' court, which has but one judge. The appellant was not entitled, under these orders, as a matter of right to have the common pleas judges sit en banc in the orphans' court.

The suggestion in the opinion of the court below that the new administrator c. t. a. investigate the conveyance from the decedent to Dr. Root is neither reviewable nor reversible. It was advisory only. It was probably superfluous since the evidence showed that the decedent had consulted another lawyer in the city of Erie on May 27, 1946, and subsequent thereto, in regard to bringing proceedings against Dr. Root to set aside the deed in question.

The learned judge below gave the case careful and painstaking attention and his conclusions were clearly correct.

The orders of the court below are affirmed at the cost of the appellant.